Charles G. **SALTER** and Carol Salter, Plaintiffs,

v.

**UNITED STATES of America, Defendant.**

No. CV–92–A–926–S.

United States District Court, M.D. Alabama, Southern Division.

May 16, 1994.

---

Larry Clyde Jarrell, Troy, AL, James P. Rea, Hogan, Smith, Alspaugh, Samples & Pratt, Birmingham, AL, for plaintiffs.

Stuart Gerson, Washington, DC, Heidi E. Weckwert, Phyllis Jackson Pyles, U.S. Dept. of Justice, Torts Branch, Civ. Div., Washington, DC, Kenneth E. Vines, Charles Redding Pitt, U.S. Attys Office, Montgomery, AL, for defendant.

## MEMORANDUM OPINION AND ORDER

ALBRITTON, District Judge.

This cause is now before the Court for consideration of Defendant's Motion to Dismiss or in the Alternative for Summary Judgment filed September 29, 1992. For the

reasons stated below, the Court finds that Defendant's motion is due to be denied.

## I. STATEMENT OF FACTS AND PROCEDURAL HISTORY

This case grew out of events occurring within the course of operations of the Southeastern Boll Weevil Eradication Program ("Program"). The Program is a cooperative effort by the federal government, several state governments, and cotton producers to eradicate the cotton-destroying pest known as the boll weevil.

Each state participating in the Program has a nonprofit corporation known as a *foundation*. Each foundation consists of cotton growers, state regulators, and technical advisors. The various state foundations send representatives to the regional Southeastern Boll Weevil Eradication Foundation ("Foundation"). Each year, the Foundation signs a "Cooperative Agreement" with the United States Department of Agriculture Animal and Plant Health Inspection Service ("APHIS"). The Program is conducted in accordance with the Cooperative Agreements which specify the duties assigned to the Foundation and the duties assigned to APHIS. Approximately seventy percent of the Program's operating expenses are paid by the Foundation, and thirty percent of the expenses are paid by the federal government.

From 1987 until 1990, Charles G. Salter ("Plaintiff") worked in the Program. He was an employee of the Foundation. He alleges that while working in the cotton fields in and around Coffee County, Alabama, he was exposed to excessive amounts of pesticides which caused him to suffer mental, emotional, and physical injuries. Plaintiff timely filed a claim for his injuries with APHIS which failed to make a final disposition of the claim within the time allowed by law.

On July 30, 1992, Plaintiff, along with his wife, filed a suit for money damages in this Court against the United States of America ("Defendant") under the Federal Tort Claims Act, 28 U.S.C. § 1346(b) and 28 U.S.C. §§ 2671 *et seq.* Plaintiff alleged claims for negligence and misrepresentation. His wife alleged a claim for loss of consortium.

On September 29, 1992, Defendant filed a pleading entitled Defendant's Motion to Dismiss or in the Alternative for Summary Judgment. By an order dated April 26, 1993, the Court dismissed Plaintiff's claim for misrepresentation and his wife's claim for loss of consortium. By the same order, the Court allowed Plaintiff to conduct further discovery for the purpose of supporting his negligence claim.

Plaintiff's negligence claim alleges that APHIS employees (who are, more broadly speaking, employees of the Defendant, the United States of America) negligently failed to provide him with the equipment he needed to safely perform his work in the cotton fields. Plaintiff also claims that APHIS employees negligently trained him how to perform his work in the fields. Plaintiff claims that the APHIS employees' negligence resulted in his exposure to pesticides which caused him mental, emotional, and physical injury. The Court now decides Defendant's Motion to Dismiss or in the Alternative for Summary Judgment as it pertains to Plaintiff's negligence claim.

## II. DISCUSSION

As its title suggests, Defendant's Motion to Dismiss or in the Alternative for Summary Judgment is actually two distinct motions. The first is a motion to dismiss, and the second is a motion for summary judgment. The Court will address the two motions separately.

### Motion to Dismiss

Defendant asks this Court to dismiss Plaintiff's negligence claim under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of federal subject matter jurisdiction.[1] Because the Court finds that it has jurisdiction over Plaintiff's claim, Defendant's motion to dismiss is due to be denied.

---

1. Rule 12(b)(6) of the Federal Rules of Civil Procedure, which is also cited by Defendant, is not authority for a motion to dismiss for lack of jurisdiction. Rule 12(b)(6) is authority for a motion to dismiss for failure to state a claim upon which relief can be granted. Defendant does not contend that Plaintiff has failed to state a claim.

Plaintiff's negligence claim is brought under the Federal Tort Claims Act ("FTCA"). 28 U.S.C. § 1346(b) and 28 U.S.C. §§ 2671, *et seq*. The FTCA is a limited waiver of the federal government's sovereign immunity. If a tort claim against the United States does not fall under the FTCA's waiver, the federal courts do not have subject matter jurisdiction to hear the claim.

In the present case, Defendant argues that Plaintiff's negligence claim does not fall under the FTCA's waiver of sovereign immunity because it is subject to three different exceptions to such waiver: the discretionary function exception, 28 U.S.C. § 2680(a); the misrepresentation exception, 28 U.S.C. § 2680(h); and the contractor exception, 28 U.S.C. §§ 1346(b) and 2671. The Court will address each exception separately.

■ *Discretionary Function Exception:* The Court finds that the discretionary function exception does not bar Plaintiff's claim. The discretionary function exception disallows a tort claim against the United States "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the [United States] Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).

Recently, the Eleventh Circuit outlined the two-part test for determining whether challenged government action falls within the scope of the discretionary function exception:

[A court] must first determine whether the challenged act or omission violated a mandatory regulation or policy that allowed no judgment or choice. The requirement of judgment or choice is not satisfied if a federal statute, regulation or policy specifically prescribes a course of action for an employee to follow because the employee had no rightful option but to adhere to the directive. Even assuming the challenged conduct involves an element of judgment, however, [the court] then must determine if the challenged actions are the kind of conduct that the discretionary function was designed to shield. The conduct must be grounded in the policy of the regulatory regime.

*Autery v. United States of America,* 992 F.2d 1523, 1526–1527 (11th Cir.1993) (citations and internal quotation marks omitted).

The Court finds that to the extent the alleged government action in this case (negligent providing of safety equipment and safety training)[2] was contrary to the directions and warnings provided by the pesticide manufacturers, such action violated a mandatory government policy that allowed for no judgment, choice, or discretion. The evidence in this case shows that APHIS had a strict policy of training the field workers such as Plaintiff in accordance with the directions and warnings provided by the pesticide manufacturers on the pesticide labels.

For example, in his deposition, John Martin, an APHIS employee who formerly worked for the Foundation, testified that APHIS formally instructed the field unit supervisors to follow the pesticide labels when handling and applying the pesticides.[3] (Mar-

---

**2.** Under the Cooperative Agreements signed by the Foundation and APHIS each year, APHIS had the duty to supply safety equipment for the field workers. (Coop. Agree. for '87, '88, '89 at 7 under section entitled "Service (Animal and Plant Health Inspection Service) will"; Coop. Agree. for '90 at 3 under section entitled "APHIS will"; *see also*, Memo. in Supp. of Def. Motion to Dismiss or in the Alt. for Summ.J. at 19; *see also*, Martin Decl. at ¶ 4).

APHIS also had the duty to train the field workers. (Coop. Agree. for '87 and '88 ¶ III(C)(3); Coop. Agree. for '89 Art. 3 at c; Coop. Agree. for '90 ¶ IV(B)(1)(e); *see also*, Memo. in Supp. of Def. Motion to Dismiss or in the Alt. for Summ. J. at 19; *see also*, Martin Decl. at ¶ 4).

Defendant claims that it delegated its duty to train the field workers to the Foundation. While there is ample evidence in the record that shows that the field unit supervisors (Foundation employees) did most of the training of the field workers, there is also ample evidence, some of which is described in the text of this opinion, that APHIS employees occasionally conducted training of the field workers. Plaintiff claims that he was injured as a result of negligent training by APHIS employees.

**3.** The Court realizes that field unit supervisors are Foundation employees. However, the fact that APHIS instructed the field unit supervisors to follow the manufacturers' labels indicates that APHIS had adopted the policy of training the workers in accordance with the labels.

tin Depo. at 34–37). The field unit supervisors were then expected to train their field workers in the same way. *Id.* Also, Tommy Baxley, a former Foundation employee, testified in his deposition that in 1987 Bob Milam, an APHIS employee, conducted a day of training in Eufaula, Alabama for field unit supervisors and some field workers. (Baxley Depo. at 9–12). At that training, Milam instructed the workers to make sure they applied the pesticides in accordance with the labels. *Id.* Baxley testified that Milam "mentioned that [following the manufacturers' labels] was mandatory, that [Milam] did not particularly want to have to make the trip to Eufaula that day, but he was informed that it was required and he had to present that information to everybody that was on board." *Id.* at 12. Furthermore, an APHIS employee named Edna Suggs testified that she had reviewed a manufacturer's label with field workers and instructed them to comply with its directions. (Suggs Depo. at 55 and 85).

Perhaps the best evidence that APHIS had a policy of teaching the field workers in accordance with the manufacturers' labels is the labels themselves. The Guthion and Malathion labels both say, "It is a violation of federal law to use this product in a manner inconsistent with its labeling." The Court would be surprised if Defendant contended that APHIS employees had the discretion to teach the field workers to disregard the labels and thereby violate federal law. As it is, Defendant makes no such contention. Thus, the Court finds that there was a policy in place at APHIS requiring that the field workers be trained in accordance with the manufacturers' labels. APHIS employees who conducted training of Plaintiff and the other field workers did not have the discretion to train contrary to the labels.

Therefore, to the extent that Plaintiff claims that his alleged injuries are the result of negligent training by APHIS employees to handle and apply the pesticides in contravention to the manufacturers' directions and warnings, Plaintiff's claim is not outside this Court's jurisdiction by virtue of the discretionary function exception. Furthermore, the manufacturers' directions indicate that certain safety equipment such as gloves and other protective clothing must be worn when applying the pesticides. (Guthion and Malathion labels). To the extent Plaintiff claims that APHIS negligently failed to provide this equipment, or instructed Plaintiff not to wear it, Plaintiff's claim is not outside this Court's jurisdiction. Thus, the discretionary function exception does not apply to strip this Court of jurisdiction over Plaintiff's negligence claim.

■ *Misrepresentation Exception:* The Court finds that the misrepresentation exception does not apply to Plaintiff's negligence claim. The misrepresentation exception disallows a claim against the United States that "aris[es] out of . . . misrepresentation." 28 U.S.C. § 2680(h).

Defendant argues that even if APHIS employees incorrectly instructed Plaintiff regarding the safe handling and application of the pesticides, a claim for that incorrect instruction would be barred by the misrepresentation exception. The Court disagrees.

The Court finds that Plaintiff alleges government conduct that went beyond simple misrepresentations. APHIS employees who engaged in training of the field workers were required to teach the workers to handle the pesticides in accordance with the manufacturers' labels. APHIS employees who gave instructions that were inconsistent with the labels were not just making misrepresentations, they were negligently carrying out their responsibility to properly train the workers.

For example, Plaintiff testified in his supplemental affidavit that he was personally instructed by John Martin, an APHIS employee, on a number of occasions regarding the handling of the pesticides. On one occasion, when Plaintiff was soaked with pesticide due to a spill, he asked Martin whether such extensive exposure was hazardous. Martin told Plaintiff that the pesticide would not harm him. Plaintiff further testified that at one point he asked Martin if gloves or other protective clothing should be worn when handling the pesticide. Again, Martin told Plaintiff that the pesticide would not hurt him.

Plaintiff testified that Edna Virgo (a.k.a. Edna Suggs), an APHIS employee, trained him how to operate a mist blower which was used to apply the pesticide. On more than one occasion, when Plaintiff asked Virgo about the nature of the pesticide used in the mist blower, Virgo responded that the pesticide was harmless and Plaintiff did not need to wear gloves or other protective clothing. Plaintiff also testified that Virgo trained Plaintiff how to use dye cards which indicate whether the pesticide has been properly dispersed by aerial applicators. Plaintiff claims that Virgo instructed Plaintiff to enter the fields to gather the dye cards immediately after the pesticide was applied by the airplanes, and Plaintiff did not need to wear protective clothing.

All of the above-described instructions that were allegedly given to Plaintiff by Martin and Virgo were contrary to the directions and warnings contained in the labels of the pesticides used in the Southeastern Boll Weevil Eradication Program. (Guthion and Malathion Labels). The Court finds that such instructions represent negligent training by the APHIS employees, not just misrepresentations.

There is another reason why the Court finds that the improper training allegedly given by APHIS employees is not covered by the misrepresentation exception. In *Block v. Neal,* 460 U.S. 289, 103 S.Ct. 1089, 75 L.Ed.2d 67 (1983), the Supreme Court stated that "[s]ection 2680(h) ... relieves the Government of tort liability for *pecuniary* injuries which are wholly attributable to reliance on the Government's negligent misstatements." *Id.* at 297, 103 S.Ct. at 1093 (emphasis added). In *Block,* the Court also stated, "The misrepresentation exception applies only when the action itself falls within the commonly understood definition of a misrepresentation claim, which has been identified with the common law action of deceit, and has been confined very largely to the invasion of interests of a financial or commercial character, in the course of business dealings." *Id.* at 296 n. 5, 103 S.Ct. 1093 n. 5 (internal quotation marks omitted) (*quoting, United States v. Neustadt,* 366 U.S. 696, 711

n. 26, 81 S.Ct. 1294, 1302 n. 26, 6 L.Ed.2d 614 (1961)).

Courts of Appeals that have addressed the misrepresentation exception have followed the Supreme Court's lead and construed the exception as applying only to injuries of a pecuniary nature. *See, Keir v. United States,* 853 F.2d 398, 410 (6th Cir.1988) (holding that misrepresentation exception did not apply to preclude consideration of medical malpractice claim based on allegation that plaintiff's consent to medical treatment was based on misrepresentation that optometrist was an ophthalmologist); *Frigard v. United States,* 862 F.2d 201, 202–203 (9th Cir.1988) (holding that district court correctly applied misrepresentation exception "[b]ecause all of the[ ] claims [were] for damages from commercial decisions based upon false or inadequate information provided by the government."); *Kohn v. United States,* 680 F.2d 922, 926 (2nd Cir.1982) ("Because the context here is hardly commercial in nature, we do not believe that appellants' claims are necessarily barred as an action for misrepresentation or deceit.").

Since Plaintiff's claim in this case is for personal injury, not for injury of a commercial or financial nature, the Court finds that his negligence claim is not covered by the misrepresentation exception. Thus, this Court is not stripped of its jurisdiction over Plaintiff's claim by the misrepresentation exception to FTCA liability.

■ *Contractor Exception:* The Court finds that the contractor exception also does not apply to Plaintiff's negligence claim. Under the FTCA, the federal government may be liable for the negligent acts of an employee of any federal agency. 28 U.S.C. §§ 1346(b) and 2671. However, the federal government generally cannot be liable for the negligent acts of an employee of a federal contractor. 28 U.S.C. § 2671. Defendant seems to construe Plaintiff's negligence claim as alleging liability of the United States for the negligent acts of Foundation employees. The Court does not similarly construe Plaintiff's claim.

The Court construes Plaintiff's Complaint and his briefs as alleging a claim against the United States under the FTCA for the negli-

gent acts of APHIS employees. The Court has jurisdiction over such claim. The Court does not believe Plaintiff is alleging that the United States is liable for the negligent acts of employees of the Foundation, and the Court expresses no opinion regarding the viability of such a claim if it were made. Thus, the contractor exception is no bar to this Court's jurisdiction over Plaintiff's negligence claim.

In sum, the Court finds that none of the exceptions to FTCA jurisdiction prevent it from hearing Plaintiff's claim. Therefore, the Court holds that Defendant's motion to dismiss for lack of federal subject matter jurisdiction is due to be denied. The Court now must decide Defendant's motion for summary judgment.

### Motion for Summary Judgment

▮ Now that the Court has decided that it has jurisdiction over Plaintiff's negligence claim, it must decide if Plaintiff's claim survives Defendant's motion for summary judgment. As mentioned previously in this opinion, Plaintiff has submitted substantial evidence that APHIS employees did, to some degree, engage in training of the field workers. Indeed, Defendant seems to concede this point. (Def. Reply to Plain. Supp. Response to Def. Motion to Dismiss or in the Alt. for Summ. J. Filed Aug. 18, 1993 at 14 n. 9—"[D]efendant [has] offered evidence that APHIS 'provides training and equipment to Foundation employees who actually carry out the eradication activities.' (Martin Decl. ¶ 4). Deposition testimony confirms this statement."). Thus, the only remaining questions for summary judgment, and the pivotal questions in this litigation, are whether APHIS employees did, in fact, negligently instruct Plaintiff (and fail to supply him with safety equipment) contrary to the directions and warnings on the manufacturers' labels, and whether Plaintiff followed the APHIS employees' instruction to his mental, emotional, and physical detriment.

In addressing these questions on summary judgment, the Court applies the normal summary judgment standard: Under *Fed. R.Civ.P.* 56(c), summary judgment is proper "if the pleadings, depositions, answers to in-

terrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. at 2553. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Id.* at 322–23, 106 S.Ct. at 2552–53.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. at 2553. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *Anderson v. Liberty Lobby,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Fed.R.Civ.P.* 56(c).

The Court finds that summary judgment is not appropriate in this case because there remain unresolved genuine issues of material fact. In his supplemental affidavit, Plaintiff

cites specific examples of APHIS employees instructing Plaintiff contrary to the manufacturers' labels. Some of these examples have already been recounted in this opinion. The affidavits of Carol Salter and William Riley Bailey corroborate the genuineness of some of these examples. In his affidavit, Plaintiff also describes significant physical and emotional reactions to his exposure to the pesticides, and the Guthion and Malathion labels indicate that deleterious effects can result from excessive exposure to the pesticides.

On the other hand, Defendant submits evidence indicating that APHIS employees never instructed the field workers to apply the pesticides contrary to the manufacturers' labels. Almost all the depositions and the declaration of John Martin indicate that APHIS employees always taught the field workers in accordance with the labels.

Thus, the evidence is in conflict. It is not the Court's job to resolve such conflict on a summary judgment motion. Instead, the case must proceed to trial for resolution.

### III.  CONCLUSION

Because the Court finds that it has federal subject matter jurisdiction over Plaintiff's claim, Defendant's motion to dismiss for lack of jurisdiction is DENIED. Furthermore, Defendant's motion for summary judgment is DENIED because there are unresolved genuine issues of material fact.

Thus, Defendant's Motion to Dismiss or in the Alternative for Summary Judgment is DENIED. Defendant is given until June 6, 1994, to file its answer.