Bawol CABIRI and Efua
Cabiri, Plaintiffs,

v.

GOVERNMENT OF THE REPUBLIC
OF GHANA, Defendant.

No. CV 95–5386.

United States District Court,
E.D. New York.

Oct. 22, 1997.

Sonnenschein, Nath & Rosenthal by Scott A. Kamber, New York City, for Plaintiffs.

Cascone & Cole by Michael S. Cole, New York City, for Defendant.

### MEMORANDUM AND ORDER

WEXLER, District Judge.

### I. BACKGROUND

Plaintiff Bawol Cabiri ("Cabiri") was a trade representative to the United States appointed by the Ghanian Government in 1983 to serve in New York. He and his family were provided with a home on Marietta Drive in Westbury, New York which was owned by the defendant the Republic of Ghana.

*Plaintiffs' Underlying Allegations*

Plaintiff Bawol Cabiri alleges that prior to July 1986, officials of Ghana formulated a scheme to deprive him of the benefits of his position as trade counsellor, and subject him to torture, false imprisonment, false arrest, physical and mental abuse, and internal exile. Cabiri was recalled to Ghana in July 1986 for consultations regarding shipments of grain. Cabiri alleges that this recall was a ruse to repatriate him, that he was forcibly removed from the ministry of trade in Ghana where he had reported, and was imprisoned for nearly a year in detention camps.

While Cabiri was being held, Ghanian officials purportedly subjected his wife, Efua Cabiri, to threats and intimidation. Mrs. Cabiri was given no information as to her husband's whereabouts or physical condition.

Ghana claims that Cabiri was retired from his post on October 31, 1986. Cabiri argues that his retirement was attempted retroactively by a letter dated April 16, 1987, and was not effective. In June 1991, Cabiri was allowed to leave Ghana and return to the United States. The State Department granted Mrs. Cabiri asylum in the United States in 1988, and granted Mr. Cabiri asylum in 1993.

*The Real Property Proceeding*

In October 1987, Ghana commenced a summary proceeding in the District Court of the State of New York located in Hempstead pursuant to New York State Real Property Actions and Proceedings Law § 713(11) ("RPAPL") (the "Real Property Proceeding") to dispossess the Cabiris from the Westbury residence.[1] In addition to alleging defenses

---

1. RPAPL § 713 provides for summary dispossess proceedings under specified grounds. The relevant grounds for this action found in subsection 711(11) state:

> The person in possession entered into possession as an incident to employment by petitioner, and the time agreed upon for such possession has expired or, if no such time was agreed

to this action, Mrs. Cabiri asserted counterclaims on behalf of herself and her husband (who was then detained in Ghana). The counterclaims included intentional infliction of emotional distress, prima facie tort, and breach of contract.

After the Cabiris, served discovery requests for their counterclaims, the parties reached a settlement as to the dispossess action, and agreed to dismiss the counterclaims so that they could be brought before this court. The parties agreed that any defenses that Ghana could assert in the federal action under the Foreign Sovereign Immunities Act or the Act of State Doctrine would be waived to the extent they had been waived in the Real Property Proceeding.[2]

## II. DISCUSSION

 This case is before this Court upon defendant's motion to dismiss for lack of subject matter jurisdiction pursuant to FRCP Rule 12(b)(1). The Foreign Sovereign Immunities Act (the "FSIA") provides the sole source of subject matter jurisdiction over foreign sovereigns in suits brought in United States courts. 28 U.S.C. § 1602 *et seq.; see Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434, 109 S.Ct. 683, 688, 102 L.Ed.2d 818 (1989); *see also Shapiro v. Republic of Bolivia*, 930 F.2d 1013, 1017 (2d Cir.1991) (citations omitted); *Letelier v. Republic of Chile*, 748 F.2d 790, 793 (2d Cir.1984) (citations omitted). As a rule, a foreign state is immune from the jurisdiction of the courts of the United States unless one of the specific exceptions contained within sections 1605 or 1607 of the Act is found to apply. 28 U.S.C. § 1604: *see Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 488–89, 103 S.Ct. 1962, 1968–69,

76 L.Ed.2d 81 (1983); *Carey v. National Oil Corp.*, 592 F.2d 673, 676 (2d Cir.1979) (footnote omitted). Only if it is determined that a foreign state is not entitled to immunity does the FSIA confer original jurisdiction on district courts. 28 U.S.C. § 1330(a); *Verlinden*, 461 U.S. at 489, 103 S.Ct. at 1969 ("[I]f the claim does not fall within one of the exceptions, federal courts lack subject-matter jurisdiction."); *see also Shapiro*, 930 F.2d at 1017 (citing § 1330(a)). If subject matter jurisdiction exists, the foreign sovereign is liable in the "same manner and to the same extent as a private individual under like circumstances." *Verlinden*, 461 U.S. at 488–89, 103 S.Ct. at 1969–70 (quoting § 1606) (footnote omitted.)

Plaintiffs admit that defendant constitutes a "foreign state" as defined by § 1603(a) of the FSIA. Therefore, the burden now shifts to plaintiffs to come forward with some facts which would allow this Court to find that an exception to the Act applies. *See Forsythe v. Saudi Arabian Airlines Corp.*, 885 F.2d 285, 289 n. 6 (5th Cir.1989); *Olsen ex rel. Sheldon v. Mexico*, 729 F.2d 641, 644 (9th Cir. 1984). Plaintiffs raise three different exceptions to sovereign immunity to this case to confer jurisdiction upon this Court. They are the tort exception, the counterclaim exception and the implied waiver exception. For the reasons stated below, this Court finds that no claim falls within any of the exceptions set forth by the Act.

### The Tort Exception

 Section 1605 (a)(5) of the FSIA provides in relevant part that:

(a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—

---

2. upon, the employment has been terminated; no notice to quit shall be required to maintain the proceeding under this subdivision.
N.Y. Real Prop. Acts. Law § 713(11) (McKinney 1984).

2. Section 6 of the Stipulation and Settlement of Agreement dated July 31, 1995 states:
 It is the intention of the parties that neither Foreign Sovereign Immunity nor the Act of State Doctrine provide [Ghana] a defense to the Counterclaim Suit if such a defense was unavailable before this Court, prior to this Court's decision to sever the counterclaims.

Therefore, [Ghana] agrees to waive any defense which may be available to it under the Act of State Doctrine if such a defense was unavailable to it any time prior to December 19, 1994. Further, [Ghana] waives any immunity it may possess under the Foreign Sovereign Immunities Act, or was otherwise unavailable to [Ghana] at any time prior to December 19, 1994. Not withstanding anything herein to the contrary, Ghana does not waive any foreign sovereign immunity except to the extent such immunity has at any time been waived.

(5) ... in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment....

The FSIA applies only when the tortious acts or omissions of a foreign state occur in the United States. Relying upon legislative history, this Court has previously held that § 1605(a)(5) applies only when the entire tort takes place in the United States. *See Fickling v. Commonwealth of Australia*, 775 F.Supp. 66, 72 (E.D.N.Y.1991). In the case at bar, the Cabiris' claims include allegations of torture, false imprisonment and physical and mental abuse. All of these claims involve alleged conduct and injuries that took place in Ghana, and not in the United States. Even those allegations asserted by Mrs. Cabiri, stating that she was subjected to mental abuse when she was refused information about her husband, involve alleged conduct of Ghanian officials acting in Ghana. Therefore, the Cabiris cannot meet the requirements of the tort exception to the FSIA because the torts did not take place entirely in the United States.

*Counterclaim Exception*

■ Section 1607 of the FSIA states in relevant part that:

In any action brought by a foreign state, or in which a foreign state intervenes, in a court of the United States or of a state, the foreign state shall not be accorded immunity with respect to any counterclaim—

(b) arising out of the transaction or occurrence that is the subject matter of the claim of the foreign state

The intent of subsection (b) is to permit the filing of compulsory counterclaims. H.R.Rep. No. 94–1487, 94th Cong., 2d Sess. 23, reprinted in (1976) U.S.Code Cong. & Admin. News at 6622. Because the "transaction or occurrence" language is also used in Fed.R.Civ.P 13(a) dealing with the filing of compulsory counterclaims, courts have relied upon the compulsory counterclaim test in analyzing the test for the FSIA counterclaim exception under § 1607(b).

The term "transaction or occurrence" has been interpreted liberally to effectuate the policies of the federal rules. *See* 6 Wright & Miller § 1410. "As a word of flexible meaning, 'transaction' may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship. *See Moore v. New York Cotton Exchange*, 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750(926)." *Warshawsky & Co. v. Arcata National Corp.*, 552 F.2d 1257, 1261 (7th Cir.1977).

*In re Oil Spill by the Amoco Cadiz*, 491 F.Supp. 161, 168 (N.D.Ill.1979). In the case at bar there exists no logical relationship between the state court Real Property Proceeding and the Cabiris' claims in this action. The Real Property Proceeding involved a summary proceeding requiring evidence of Ghana's ownership of the Westbury residence and its right to possession. The claims before this Court are far more complex, involve actions that occurred primarily in Ghana, and are completely independent of the Cabiris, right to retain possession of the Westbury residence. Unlike the Real Property Proceeding, the evidence here would involve events and testimony that have nothing to do with the Westbury residence. Because the evidence required to assert or defend the Cabiris' claims of breach of contract, false imprisonment, torture and intentional infliction of emotional distress is so distinct from the evidence which would have been needed in a summary real property dispossess proceeding, this Court finds that there is no logical relationship between the claims. Therefore, even though Ghana had stipulated to waive its jurisdictional defense of sovereign immunity to the extent that it had during the Real Property Proceeding, the claims at bar do not fall under the counterclaim exception of the FSIA because they do not arise out of the same transaction or occurrences as the Real Property Proceeding.

*Implied Waiver of Immunity*

Section 1605 (a) of the FSIA removes jurisdictional immunity from a foreign state in any case—

(1) in which the foreign state has waived its immunity either explicitly or by implication, notwithstanding any withdrawal of the waiver which the foreign state may purport to effect except in accordance with the terms of the waiver.

Clearly, Ghana has agreed to a limited explicit waiver of immunity in this case by way of its stipulation with the Cabiris to sever and dismiss their counterclaims in the Real Property Proceeding. However, in accordance with the terms of that waiver, the Cabiris must show some implied waiver of immunity in the Real Property Proceeding to invoke the agreement as a waiver in this case. The Cabiris have advanced two distinct arguments that Ghana has waived its sovereign immunity implicitly.

■ The Cabiris' first argument was that the treatment of Bawol Cabiri while he was detained in Ghana was so reprehensible that it amounted to a jus cogens violation. Jus cogens is a doctrine which recognizes certain fundamental international norms. The theory advanced by the Cabiris is that when a state enters the family of nations it agrees implicitly to adhere to these fundamental international norms. Because these norms are so universally accepted, the Cabiris argue that a state waives its sovereign immunity with respect to violations of these norms by merely holding itself out as a state. However, the Second Circuit has recently rejected this theory and absent something more, a jus cogens violation does not amount to an implied waiver of sovereign immunity. *Smith v. Socialist People's Libyan Arab Jamahiriya*, 101 F.3d 239, 244 (2d Cir.1996).

■ With respect to the Cabiris' second argument that Ghana impliedly waived its immunity, they rely upon a Ninth Circuit case holding that a foreign state which has involved the United States courts in a sham proceeding in furtherance of its persecution of certain individuals has impliedly waived its right to claim immunity from suit by such individuals. *Siderman de Blake v. Republic of Argentina*, 965 F.2d 699 (9th Cir.1992).

In *Siderman de Blake*, plaintiff Jose Siderman was an Argentina citizen of Jewish decent. When an anti-semitic military junta overthrew the government in 1976, ten masked men carrying machine guns forcibly entered the home of Jose and Lea Siderman. The men, acting under the direction of the military government, blindfolded, shackled and kidnapped Jose Siderman. They beat and tortured him for seven days, purportedly only because of his Jewish faith. At the end of the week, Siderman was told to leave Argentina or he and his family would be killed. The Sidermans left Argentina and joined their daughter Suzanna Siderman de Blake in the United States. In the process, Jose Siderman sold his interest in 127,000 acres of land at a steep discount. After the Sidermans left Argentina, their persecution did not end. Argentine military officers altered real property records to indicate that Jose owned only 127 acres of land prior to sale rather than 127,000. Moreover, they initiated criminal proceedings against Siderman in Argentina claiming that he sold land which did not belong to him. Argentina sought the involvement of United States courts in obtaining jurisdiction over Jose by use of a letter rogatory requesting that the Los Angeles Superior Court serve him with documents relating to the criminal action. *Siderman de Blake*, 965 F.2d at 702–04. The *Siderman de Blake* court held that Argentina had waived its immunity because it "deliberately involved United States courts in its efforts to persecute Jose Siderman." *Id.* at 722. The Ninth Circuit reasoned that implied waiver of immunity cases turn on whether "a sovereign contemplated the involvement of United States courts in the affair in issue." *Id.* at 721. Under those facts, Argentina not only envisioned a United States court's participation in its persecution of the Sidermans but deliberately implicated the court in its efforts to further persecute them. "If Argentina has engaged our courts in the very course of activity for which the Sidermans seek redress, it has waived its immunity as to that redress." *Id.*

Assuming without deciding that the Second Circuit would follow the reasoning of *Siderman de Blake*, this case is distinct from the facts of *Siderman de Blake*, and does not amount to an implied waiver of Ghana's sovereign immunity. *Siderman de Blake* involved a sham criminal proceeding. There

**134**

was no legitimate role for the California court in that proceeding other than to further Argentina's attempt to repatriate and persecute Jose Siderman. By contrast, Ghana's use of the state court in this case involves a procedurally necessary method to repossess property which no one disputes is owned by them. The Cabiris do not claim that they owned the Westbury residence. Rather, they merely argue that they were entitled to possession under the terms of Bawol Cabiri's employment. The Cabiris do argue that the underlying goal of Ghana's dispossess action was to force Bawol Cabiri to return to Ghana. Presumably, once the Cabiris were evicted from the Westbury residence they would have nowhere to go but back to Ghana. This argument is not persuasive because the Cabiris would not be forced to leave this country merely because they were dispossessed of their residence. Under this logic, Ghana could never avail itself of a United States court to regain possession of its residence without opening itself up to a torture and false imprisonment suit by reason of an implied waiver of immunity. Because the Real Property Proceeding involves a real dispute that would eventually require state court resolution, it does not compare to the sham criminal proceeding in *Siderman de Blake* which existed only to further the persecution of the Sidermans. Consequently, the Cabiris have failed to demonstrate an implied waiver of immunity by Ghana.

### III. CONCLUSION

Because the Cabiris have not identified an exception to Ghana's sovereign immunity under the FSIA, their case must be dismissed for lack of subject matter jurisdiction. The Clerk of the Court is directed to close the case.

SO ORDERED.