**Bawol CABIRI and Efua Cabiri, Plaintiffs–Appellants,**

v.

**GOVERNMENT OF THE REPUBLIC OF GHANA, Defendant–Appellee.**

**No. 1997, Docket 97–9563.**

United States Court of Appeals, Second Circuit.

Argued June 24, 1998.

Decided Jan. 26, 1999.

Scott A. Kamber, New York, N.Y. (Wechsler Harwood Halebian & Feffer LLP, on the brief), for Plaintiffs–Appellants.

Michael S. Cole, New York, N.Y. (Cascone & Cole, on the brief), for Defendant–Appellee.

Before: VAN GRAAFEILAND, McLAUGHLIN and JACOBS, Circuit Judges.

JACOBS, Circuit Judge:

Bawol Cabiri was employed by the Republic of Ghana ("Ghana") as its trade representative to the United States, and enjoyed the use of a house in Westbury, New York pursuant to his employment contract. In 1986, Ghana summoned Cabiri home—where he alleges that he was detained and tortured—and undertook to discharge Cabiri from his post. When Ghana sued in state court to evict the Cabiri family from the Westbury house in which they had remained after Bawol Cabiri was recalled, Bawol Cabiri asserted counterclaims for breach of contract, abuse of trust, fraudulent misrepresentation, false imprisonment, and intentional infliction of emotional distress. His wife, Efua Cabiri, asserted a counterclaim for intentional infliction of emotional distress.

After the parties settled the eviction proceeding, the Cabiris repleaded their counterclaims in an action against Ghana in the United States District Court for the Eastern District of New York (Wexler, J.). The Cabiris now appeal from a judgment dismissing their claims for lack of subject matter jurisdiction under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602–11 (1994).

Under the FSIA, a foreign state is generally immune from the jurisdiction of the courts of the United States, subject however to implied waiver, 28 U.S.C. § 1605(a)(1), and to certain other exceptions, including one for counterclaims "arising out of the transaction or occurrence that is the subject matter of the claim of the foreign state," id. § 1607, and another for noncommercial torts committed in the United States, id. § 1605(a)(5). The Cabiris contend (1) that all of their claims fall within the counterclaim exception; (2) that Efua Cabiri's claim of intentional infliction of emotional distress also falls within the noncommercial tort exception; and (3) that in any event Ghana has impliedly waived immunity with respect to all of their claims.

The district court disagreed, concluding that none of the Cabiris' claims fell within the FSIA's exceptions to immunity. We conclude that the only claim that falls within the counterclaim exception to the FSIA is Bawol Cabiri's breach of contract claim; that Efua Cabiri's claim for intentional infliction of emotional distress is outside the FSIA's exception for non-commercial torts committed in the United States; and that Ghana has not waived its sovereign immunity with respect to any of the claims. We therefore reverse the judgment of the district court insofar as it dismissed Bawol Cabiri's breach of contract claim, and affirm in every other respect.

## BACKGROUND

Pursuant to a 1983 contract of employment as Ghana's trade representative to the United States, Bawol Cabiri was given the use, for the duration of his employment, of a house owned by Ghana and located in Westbury, New York. In July 1986, Cabiri was

summoned back to Ghana. He alleges that upon his return, he was detained and tortured as a suspect in a planned coup d'état. Cabiri was imprisoned for approximately a year, and was not allowed to return to the United States until 1991. During that time, his wife and family lived in the Westbury house.

In an internal government memorandum dated September 1, 1986, the head of Ghana's National Security apparatus proposed that Efua Cabiri and her children be repatriated. On April 16, 1987, Ghana wrote to Efua Cabiri purporting to "retire" her husband, effective October 31, 1986, and in October of 1987 brought a summary proceeding in Nassau County District Court to evict the Cabiri family from the Westbury house. Plaintiffs allege that, through the initiation of the eviction proceeding, as well as through "threats [and] intimidation," Ghana "attempted to force Efua Cabiri and her children to leave their residence ... and return to Ghana."

By way of counterclaims to the eviction proceeding, Bawol Cabiri pleaded breach of contract, abuse of trust, fraudulent misrepresentation, false imprisonment, and intentional infliction of emotional distress, and Efua Cabiri asserted a single counterclaim for intentional infliction of emotional distress.

In the settlement of the eviction proceeding, the Cabiris agreed to vacate the house and assert their counterclaims in a new federal action, and the parties agreed that in that case Ghana would waive sovereign immunity to the extent that the counterclaim exception to the FSIA,[1] or any other exception, would have amounted to a waiver of sovereign immunity in the state proceeding.

The Cabiris then sued Ghana in the United States District Court for the Eastern District of New York (Wexler, *J.*), asserting the same claims they had raised as counterclaims in the state proceeding. They now appeal from a judgment dismissing their complaint pursuant to Fed.R.Civ.P. 12(b)(1) for lack of sub-

ject matter jurisdiction under the FSIA. *See Cabiri v. Government of the Republic of Ghana,* 981 F.Supp. 129 (E.D.N.Y.1997). On appeal, the Cabiris argue that Ghana lacks sovereign immunity (i) as to all of their claims, by virtue of the counterclaim exception to the FSIA, 28 U.S.C. § 1607 (1994), (ii) as to Efua Cabiri's claim for intentional infliction of emotional distress, by virtue of the FSIA's exception for non-commercial torts committed in the United States, 28 U.S.C. § 1605(a)(5) (1994), and (iii) as to all of their claims, by virtue of the implied waiver exception to the FSIA, 28 U.S.C. § 1605(a)(1) (1994).

## DISCUSSION

The FSIA is the sole source for subject matter jurisdiction over any action against a foreign state. *See Argentine Republic v. Amerada Hess Shipping Corp.,* 488 U.S. 428, 439, 109 S.Ct. 683, 690, 102 L.Ed.2d 818 (1989). Except as otherwise provided in 28 U.S.C. §§ 1605 to 1607, "a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States." 28 U.S.C. § 1604. "Once the defendant presents a prima facie case that it is a foreign sovereign, the plaintiff has the burden of going forward with evidence showing that, under exceptions to the FSIA, immunity should not be granted, although the ultimate burden of persuasion remains with the alleged foreign sovereign." *Cargill Int'l S.A. v. M/T Pavel Dybenko,* 991 F.2d 1012, 1016 (2d Cir.1993) (citation omitted). "We review de novo the district court's conclusions of law regarding jurisdiction under the FSIA." *Commercial Bank of Kuwait v. Rafidain Bank,* 15 F.3d 238, 241 (2d Cir.1994).

### I The Counterclaim Exception

Plaintiffs argue that all of their claims—his for breach of contract, abuse of trust, fraudulent misrepresentation, and false imprisonment, and their claims for intentional infliction of emotional distress—fall within the

---

1. Although the FSIA was recently amended, *see* Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, § 221, 110 Stat. 1214, 1241–43 (1996), those amendments are not relevant here because they did not materially alter

any of the provisions at issue on this appeal and because the parties stipulated that Ghana's sovereign immunity would be determined as of 1994.

FSIA's counterclaim exception because they arose, like the eviction proceeding, out of Bawol Cabiri's employment relationship with Ghana.

The counterclaim exception provides:

In any action brought by a foreign state, or in which a foreign state intervenes, in a court of the United States or of a State, the foreign state shall not be accorded immunity with respect to any counterclaim

. . .

(b) arising out of the transaction or occurrence that is the subject matter of the claim of the foreign state; . . . .

28 U.S.C. § 1607 (1994). The FSIA House Report notes that the phrase "transaction or occurrence" in § 1607 corresponds to the test for compulsory counterclaims in Fed.R.Civ.P. 13(a), and gives as the rationale for the exception that "if a foreign state brings or intervenes in an action based on a particular transaction or occurrence, it should not obtain the benefits of litigation before U.S. courts while avoiding any legal liabilities claimed against it and arising from that same transaction or occurrence." H.R.Rep. No. 94–1487, at 23 (1976), *reprinted in,* 1976 U.S.C.C.A.N. 6604, 6622.

To construe "transaction or occurrence" in § 1607(b), we look for guidance to cases that construe the same phrase in Rule 13(a). *See, e.g., In re Oil Spill by the Amoco Cadiz,* 491 F.Supp. 161, 168 (N.D.Ill.1979); *Restatement (Third) of Foreign Relations Law* § 456 cmt. f (1986) ("Since the phrase 'transaction or occurrence that is the subject matter of the claim' is the same in Section 1605(b) as in Rule 13(a), decisions construing that phrase as used in Rule 13(a) may serve as guidance in construing section 1605(b)."). Under Rule 13(a), a counterclaim is compulsory if it "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed.R.Civ.P. 13(a).

In *Moore v. New York Cotton Exchange,* 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750 (1926), the seminal Supreme Court case on the "transaction" test, the Court emphasized the "flexible meaning" of the word: "It may comprehend a series of many occurrences, depending not so much upon the immediate-

ness of their connection as upon their logical relationship." *Id.* at 610, 46 S.Ct. at 371. The Court therefore concluded that plaintiff's suit against a cotton exchange—alleging that the exchange violated the antitrust law by denying the plaintiff access to price quotations—arose out of the same transaction as the counterclaim in which the exchange alleged that the plaintiff was illegally receiving the quotations from an unauthorized source. The Court reasoned that the refusal to furnish the quotations was "the one circumstance without which neither party would have found it necessary to seek relief." *Id.*

We have construed the transaction or occurrence standard liberally:

In determining whether a claim arises out of the transaction . . . that is the subject matter of the opposing party's claim, this Circuit generally has taken a broad view, not requiring an absolute identity of factual backgrounds . . . but only a logical relationship between them. This approach looks to the logical relationship between the claim and the counterclaim, and attempts to determine whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit.

*United States v. Aquavella,* 615 F.2d 12, 22 (2d Cir.1979) (internal quotation marks and citations omitted); *see also Computer Assocs. Int'l, Inc. v. Altai, Inc.,* 893 F.2d 26, 29 (2d Cir.1990) ("The test for determining what constitutes the same transaction or occurrence is whether there exists a logical relationship between the claim and the counterclaim." (internal quotation marks omitted)).

The district court, applying the correct standard, decided that the Cabiris' claims are not logically related to the eviction, because the eviction "involved a summary proceeding requiring evidence of Ghana's ownership of the Westbury residence and its right to possession" while the Cabiris' claims "are far more complex, involve actions that occurred primarily in Ghana, and are completely independent of the Cabiris['] right to retain possession of the Westbury residence." *Cabiri,* 981 F.Supp. at 132 (E.D.N.Y.1997). In addition, the district court found it significant

that the evidence required to prove the eviction claim and the counterclaims was quite different. *See id.*

We analyze the applicability of the counterclaim exception to each of the claims separately:

### 1. Breach of Contract.

◼ We think that Bawol Cabiri's breach of contract claim arises out of the same transactions as the eviction proceeding: Cabiri's employment contract and his termination. *See Adam v. Jacobs,* 950 F.2d 89, 92 (2d Cir.1991) ("[U]nder Second Circuit case law, claims for rescission and enforcement arise out of the same transaction or occurrence."); *see also Sage Realty Corp. v. Insurance Co. of N. Am.,* 34 F.3d 124, 129 (2d Cir.1994) (holding that counterclaim concerning the proper calculation of additional rent and expenses under a lease arose from same transaction as claim for unpaid rent); 6 Charles Alan Wright *et al., Federal Practice & Procedure* § 1410, at 68 (2d ed. 1990) ("When the same contract serves as the basis for both the claims and the counterclaims, the logical relationship standard also has been satisfied.").

In his breach of contract claim, Cabiri alleges that Ghana prevented him from performing his duties as trade representative by detaining him, and that it failed to compensate him for his salary and expenses since October 1986, the date of his alleged retirement. The district court viewed the state court eviction proceeding solely in terms of the possessory interests at issue. *See Cabiri,* 981 F.Supp. at 132. However, under the contract, Bawol Cabiri's possession of the property was an incident of his employment. So the main issue in the eviction proceeding (as recognized in Ghana's pleadings before the state court) was whether Cabiri's employment was lawfully terminated. The eviction proceeding and the breach of contract claim alike concern the same employment contract and relationship, and the core issue in both claims is whether Cabiri's employment was lawfully terminated.

### 2. Abuse of Trust and Fraudulent Misrepresentation.

◼ Bawol Cabiri alleges that Ghana abused a relationship of trust (*i.e.,* the employment relationship) by inducing him to return to Ghana under false pretenses. His fraudulent misrepresentation claim is based essentially on the same allegations. Unlike Cabiri's breach of contract claim, these two claims, and the evidence required to establish them, do not concern whether the contract was lawfully performed or terminated. We agree with the district court that there is no logical relationship between these claims and the eviction proceeding and therefore that these claims did not arise out of the same "transaction or occurrence."

Cabiri points out that these claims arise from the same employer-employee relationship that formed the basis for the Cabiris' tenancy in Westbury and that without the employment relationship, neither counterclaim could have arisen. But the whole thrust of Cabiri's contract claim is that his employment and his tenancy in Westbury was unaffected by the wrongful recall and detention, and the only link between the employment and these claims (for abuse of trust and fraudulent concealment) is that Cabiri's employment was used as a mere pretense to draw him home. Under the limitless principle of relation urged by Cabiri, a claim against an employer arising out of an assault by a fellow employee would arise from the same transaction as an employer's claim against the employee for stealing trade secrets.

Cabiri also argues that "[t]he logical relationship between the[se] claims is ... demonstrated by the fact that the discovery required for the Cabiris to prove their federal claims is coextensive with the discovery the Cabiris sought to support their defenses in the State Court Action." We disagree. The record suggests that some discovery in the state court action related to Cabiri's wrongful repatriation and his detention in Ghana; however, that discovery related to the counterclaims, and therefore does not suggest a factual nexus between those counterclaims (pleaded as claims here) and the eviction itself.

Cabiri also relies on a decision in a related action he brought against Baffour Assasie–Gyimah, a Ghanaian official who allegedly tortured Cabiri in Ghana. *See Cabiri v. Assasie–Gyimah,* 921 F.Supp. 1189, 1191 (S.D.N.Y.1996). In that case, Cabiri served Assasie–Gyimah with process while Assasie–Gyimah was in New York for the purpose of being deposed for the state court eviction proceeding. In denying Assasie–Gyimah's motion to dismiss for lack of personal jurisdiction, Judge Schwartz acknowledged the general rule that "parties ... coming from another jurisdiction are exempt from service of civil process while in attendance upon court," but held that the rule did not apply because "the very subject matter for [Assasie–Gyimah's] appearance in the [state action] is the subject matter for the lawsuit which is being brought against him now, and the two proceedings involve vindication of the same cluster of rights and interests." *Id.* at 1193–94 (internal quotation marks omitted). In holding that the actions dealt with the same subject matter, however, Judge Schwartz noted that Assasie–Gyimah was deposed to gather evidence to support Cabiri's counterclaims. *See id.* at 1194. Thus, Judge Schwartz did not implicitly decide that the eviction proceeding was related to the proceeding before him; only that the counterclaims were so related. Judge Schwartz's opinion does not undermine our conclusion that Bawol Cabiri's claims for abuse of trust and fraudulent misrepresentation do not arise out of the same transaction as the eviction proceeding.

*3. False Imprisonment; Intentional Infliction of Emotional Distress.*

■ Bawol Cabiri's claims for false imprisonment and intentional infliction of emotional distress allege his imprisonment and torture, and Efua Cabiri's claim of intentional infliction of emotional distress alleges that offi-

cials at Ghana's New York mission refused to give her information about the location of her husband. Like the abuse of trust and fraudulent misrepresentation claims, the issues presented by these claims lack a sufficient logical relationship to Bawol Cabiri's employment contract and its termination. In addition, as with the abuse of trust and fraudulent misrepresentation claims, the discovery relating to plaintiffs' counterclaims for false imprisonment and intentional infliction of emotional distress is not properly viewed as "coextensive" with the discovery relating to the eviction proceeding, nor are we of the view that Judge Schwartz's holding in *Cabiri v. Assasie–Gyimah* evidences that these claims are related to the eviction proceeding.

**II  The Non–Commercial Tort Exception**

■ Efua Cabiri contends that her claim for intentional infliction of emotional distress—in essence that the Ghanaian mission in the United States misrepresented her husband's whereabouts [2]—is based upon tortious acts within the United States by officials at Ghana's New York mission.

Under the FSIA, United States courts have subject matter jurisdiction over actions against foreign states that commit non-commercial tortious acts within the United States, subject however to certain provisos, one of which preserves immunity for torts of misrepresentation:

(a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case ...

(5) not otherwise encompassed in paragraph (2) above [which relates to commercial activities], in which money damages are sought against a foreign state for *personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission* of that foreign

---

**2.** Plaintiffs' complaint alleged the following facts in support of Efua Cabiri's intentional infliction of emotional distress claim:

Defendant refused to provide Efua Cabiri with any information regarding her husband's whereabouts or physical condition, despite her repeated requests. Defendant intentionally provided Mrs. Cabiri false information about her husband through a letter stating that Ba-

wol Cabiri's whereabouts were unknown to the Republic of Ghana. The letter was on the stationery of Ghana's New York Mission and was received at 34 Marietta Drive.

In addition, Efua Cabiri has claimed that one of the consular officials warned her that a "black woman from Africa" could not get justice in a United States court.

state or of any official or employee of that foreign state while acting within the scope of his office or employment; *except this paragraph shall not apply to*

. . .

(B) *any claim arising out of* malicious prosecution, abuse of process, libel, slander, *misrepresentation, deceit,* or interference with contractual rights . . . .[3]

28 U.S.C. § 1605 (emphasis added).

In an effort to plead around the proviso of subsection (a)(5)(B) the complaint is cast in terms of the intentional infliction of emotional distress. However cast, the wrongful acts alleged to have caused the injury are misrepresentations made to Efua Cabiri concerning her husband's whereabouts. Because this claim therefore is subject to the proviso of § 1605(a)(5)(B), it falls outside the non-commercial tort exception, and the district court properly dismissed it.

■ Plaintiff argues for a very broad reading of the FSIA language that waives sovereign immunity for "personal injury," and for a reading of the proviso for "misrepresentation" and "deceit" so narrow as to nullify it. The FSIA House Report says of § 1605(a)(5) that, although "cast in general terms as applying to all tort actions for money damages, not otherwise encompassed by Section 1605(a)(2) relating to commercial activities," it "is directed primarily at the problem of traffic accidents." H.R.Rep. No. 94–1487, at 20–21 (1976), *reprinted in,* 1976 U.S.C.C.A.N. 6604, 6619. This observation is not altogether helpful, but we do not have to limit § 1605(a)(5) to the roadway in order to conclude with confidence that Ghana enjoys immunity as to this claim—for emotional injury caused by the refusal of a foreign state, however nefarious, to give its citizens in the United States full or truthful information

concerning its operations. The FSIA is not an enforcement mechanism for global freedom of information.

This Court's opinion in *Kohn v. United States,* 680 F.2d 922 (2d Cir.1982), which the parties have not cited, does not compel a different result. In *Kohn,* the parents of a soldier who had been murdered by a fellow soldier pleaded a variety of claims against the United States on their son's behalf and on their own. *Kohn* is chiefly concerned with the government's defense under *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), from which the only surviving claim was one (asserted on behalf of the parents) for intentional infliction of emotional distress on the ground that they were denied truthful information concerning their son's death. *See id.* at 924. The parents characterized their cause of action as arising out of the " 'suppress[ion] of information from, or release [of] fraudulent information to' them," and the government invoked the Federal Tort Claims Act ("FTCA"), which, as does the FSIA, preserves sovereign immunity for claims arising out of misrepresentation.[4] *See id.* at 924, 926. We remanded for trial in *Kohn,* which is the relief Efua Cabiri seeks on this appeal.

*Kohn* was skeptical about the government's FTCA immunity defense: the Court pointed out that the exceptions for misrepresentation and deceit "have generally been applied only to actions for damages due to commercial decisions that were predicated on incorrect or incomplete information." *Id.* at 926. In so stating, the Court relied on a footnote in *United States v. Neustadt,* which observes (i) that "a motor vehicle operator's negligence in giving a misleading turn signal" does not "arise out of misrepresentation" within the meaning of the FTCA; (ii) that "so far as misrepresentation has been treated as giving rise in and of itself to a distinct

---

3. Although cast in terms that may be read to require that only the injury rather than the tortious acts occur in the United States, the Supreme Court has held that this exception "covers only torts occurring within the territorial jurisdiction of the United States." *Argentine Republic v. Amerada Hess Shipping Corp.,* 488 U.S. 428, 441, 109 S.Ct. 683, 692, 102 L.Ed.2d 818 (1989).

4. *See* 28 U.S.C. § 2680(h) (1994). The FSIA House Report provides that "[t]he exceptions provided in subparagraph[] ... (B) of section 1605(a)(5) correspond to many of the claims with respect to which the U.S. Government retains immunity under the Federal Tort Claims Act, 28 U.S.C. 2680(a) and (h)." H.R.Rep. No. 94–1487, at 21 (1976), *reprinted in,* 1976 U.S.C.C.A.N. 6604, 6620.

cause of action in tort, it has been identified with the common law action of deceit," and (iii) that the tort of misrepresentation has "very largely" been confined to "the invasion of interests of a financial or commercial character, in the course of business dealings." *United States v. Neustadt,* 366 U.S. 696, 711 n. 26, 81 S.Ct. 1294, 1302 n. 26, 6 L.Ed.2d 614 (1961) (alterations, internal quotations marks and citations omitted).

But *Kohn* stopped well short of holding that the United States had waived sovereign immunity for non-commercial torts arising from its suppression of information or its release of information that was fraudulent. Indeed, the panel in *Kohn* had no occasion to decide that question because the Kohns successfully argued on appeal that they should be permitted to amend their remaining cause of action to allege a host of additional allegations (*e.g.,* that the Army "negligently failed to provide an honor guard for their sons burial," and "wrongfully sent a copy of their son's autopsy report complete with photographs to their home"), many of which have nothing to do with representations or concealments, and do not remotely sound in misrepresentation or deceit. *See id.* at 924, 927. The Court in *Kohn* could therefore say (without deciding): we do "not believe that appellants' claims are *necessarily* barred as an action for misrepresentation or deceit"; by remanding, the Court did not mean "to suggest that on remand, appellants w[ould] *necessarily* be able to satisfy all relevant jurisdictional requirements." *Id.* at 926, 927 (emphasis added). In short, our opinion in *Kohn* might have resolved the issue considered on the present appeal (if this Court had not allowed the plaintiffs to amend their cause of action), but did not settle the question.

The district court's dismissal of Efua Cabiri's claim for intentional infliction of emotional distress is affirmed.

## III   The Implied Waiver Exception

■  Finally, plaintiffs argue that their claims fall within the implied waiver exception of the FSIA, § 1605(a)(1), which provides: "A foreign state shall not be immune from the jurisdiction of courts of the United States" where "the foreign state has waived its immunity either explicitly or by implication." The Cabiris argue that Ghana implicitly waived its sovereign immunity by beginning the eviction proceeding.

"We and other courts have observed that the implied waiver provision of Section 1605(a)(1) must be construed narrowly." *Smith v. Socialist People's Libyan Arab Jamahiriya,* 101 F.3d 239, 243 (2d Cir.1996) (internal quotation marks and citations omitted), *cert. denied,* —— U.S. ——, 117 S.Ct. 1569, 137 L.Ed.2d 714 (1997). We have previously suggested that § 1605(a)(1) requires that the plaintiff demonstrate proof of a subjective intent to waive immunity. *See Drexel Burnham Lambert Group, Inc. v. Committee of Receivers for Galadari,* 12 F.3d 317, 327 (2d Cir.1993) (quoting with approval statement in *Frolova v. Union of Soviet Socialist Republics,* 761 F.2d 370, 378 (7th Cir.1985), that "waiver would not be found absent a conscious decision to take part in the litigation and a failure to raise sovereign immunity despite the opportunity to do so" (emphasis omitted)); *see also Princz v. Federal Republic of Germany,* 26 F.3d 1166, 1174 (D.C.Cir. 1994) ("[T]he *amici's jus cogens* theory of implied waiver is incompatible with the intentionality requirement implicit in § 1605(a)(1)."); 15 James Wm. Moore *et al., Moore's Federal Practice* § 104.12[1][a], at 104–33 (3d ed. 1998) ("Courts will rarely find that a nation has waived its sovereign immunity without strong evidence that waiver was what the state intended."). For example, in *Shapiro v. Republic of Bolivia,* 930 F.2d 1013, 1017 (2d Cir.1991), we pointed out that the House Report lists examples of implicit waiver "in which the waiver was unmistakable, and courts have been reluctant to find an implied waiver where the circumstances were not similarly unambiguous."[5]

---

5. The House Report to the FSIA gives three examples of an implied waiver: (i) "where a foreign state has agreed to arbitration in another country"; (ii) "where a foreign state has agreed that the law of a particular country should gov-

ern a contract"; or (iii) "where a foreign state has filed a responsive pleading in an action without raising the defense of sovereign immunity." H.R.Rep. No. 94–1487, at 18 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604, 6617. "We recognize

In *Smith,* we noted that the concept of implied waiver can be read to apply to three different types of circumstances: (a) where a subjective intent to waive immunity has been demonstrated; (b) where the foreign state has taken an act that objectively can be interpreted as exhibiting an intent to waive immunity; or (c) where a foreign state has taken acts that forfeit its right to immunity, irrespective of whether it has intended to do so. *See Smith,* 101 F.3d at 243. However, we reserved decision on which of the three possible meanings of waiver was intended by Congress, finding it sufficient to hold that waiver could not be implied from a state's membership in the community of nations. *See id.* at 244–45. Here, Ghana has taken no action that can be understood to demonstrate either an objective or a subjective intent to waive immunity with respect to these claims; and Ghana's commencement of proceedings in New York to evict plaintiffs from a house that Ghana owns (even if occupancy is arguably the contractual perquisite of an employment relationship frustrated by Ghana's wrongful detention and torture of its employee in Ghana) does not require us to decide the circumstances, if any, under which a foreign state forfeits immunity.

Plaintiffs' immunity argument rests entirely, and precariously, on *Siderman de Blake v. Republic of Argentina,* 965 F.2d 699 (9th Cir.1992), in which it was alleged that Argentina (i) kidnapped and tortured Siderman, who then sold part of his large Argentine land holdings and fled with his family to asylum in the United States; (ii) altered land records to promote a spurious criminal prosecution against Siderman for selling land he did not own; (iii) presented letters rogatory in a California court in aid of that prosecution; and (iv) unsuccessfully sought Siderman's extradition from a third country. *See id.* at 703. Siderman's subsequent federal lawsuit, seeking damages from Argentina for torture and other persecutions, was dismissed by the district judge, but revived by

an adventurous panel of the Ninth Circuit on the ground that Argentina may have waived sovereign immunity by seeking the assistance of a court in the United States in furthering a scheme of persecution from which Siderman's claim arose. *See id.* at 721–22. The panel left it "up to the district court on remand to determine whether the requisite direct connection exists." *Id.* at 722.

Plaintiffs build an analogy with *Siderman* by alleging that the purpose of Ghana's eviction proceeding was to force the Cabiri family's repatriation, and was therefore a step in Ghana's scheme to persecute and torture the Cabiri family. However, as the district court pointed out, *see Cabiri v. Government of the Republic of Ghana,* 981 F.Supp. 129, 134 (E.D.N.Y.1997), eviction would have compelled the Cabiris to vacate the house in Westbury, not to return to Ghana. Moreover, the eviction proceeding was brought after Cabiri had been released by the authorities in Ghana, and after the acts that are the subject of these claims are alleged to have occurred. We agree with the district court that the eviction action lacks a direct connection to the Cabiris' claims in this lawsuit.

We are unpersuaded by the analogy to *Siderman.* *Siderman* itself relies on largely inapt citation to cases in which the issue was whether treaties or written agreements entered into by foreign sovereigns contemplated the adjudication of disputes by courts in the United States. *See id.* at 721. The implicit theory of *Siderman* is new and dubious, and seems to be that a foreign state forfeits immunity with respect to matters related to a scheme of persecution if it advances that scheme by bringing suit in the United States. Even assuming that *Siderman* were sound and persuasive, the opinion itself disclaims the broader reach that the Cabiris claim for it.[6]

that the examples given in the House Report are not necessarily the only circumstances in which an implied waiver might be found." *Smith,* 101 F.3d at 244.

**6.** The panel cautioned: "Only because the Sidermans have presented evidence indicating that

Argentina's invocation of United States judicial authority was part and parcel of its efforts to torture and persecute Jose Siderman have they advanced a sufficient basis for invoking that same authority with respect to their causes of action for torture." *Id.* at 722.

Finally, plaintiffs' argument for implied waiver is (at least) in tension with the FSIA's separate exception to immunity for counterclaims "arising out of the transaction or occurrence that is the subject matter of [a] claim" brought by the foreign state. 28 U.S.C. § 1607 (1994). We conclude *supra* that except for the breach of contract claim, none of these claims arises out of the same transaction or occurrence as the eviction proceeding. To allow plaintiffs to establish waiver on the basis of a connection between Ghana's eviction proceeding and causes of action that do not come within the counterclaim exception would in effect broaden the application of the counterclaim exception beyond the parameters intended by Congress.

## CONCLUSION

The judgment of the district court is affirmed insofar as it dismissed Bawol Cabiri's claims for abuse of trust, fraudulent misrepresentation, and false imprisonment and insofar as it dismissed both Cabiris' claims for intentional infliction of emotional distress claims, but is reversed insofar as it dismissed Bawol Cabiri's breach of contract claim, and as to that claim is remanded for further proceedings.

VAN GRAAFEILAND, Circuit Judge, concurring in part and dissenting in part.

I concur with my colleagues that the district court's dismissal of Bawol Cabiri's breach of contract claim should be reversed. I cannot agree, however, with their handling of Efua Cabiri's claim for the infliction upon her of mental and emotional distress.

The infliction of mental or emotional distress is a separate and distinct tort, not to be confused with other more commonly known torts. *See Long v. Beneficial Finance Co. of New York, Inc.*, 39 A.D.2d 11, 14, 330 N.Y.S.2d 664 (1972); *Restatement (Second) of Torts* § 46 cmt. (b)(1965). It is not a "claim arising out of malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights," with respect to which a foreign state still can claim immunity from liability under 28 U.S.C. § 1605(a)(5)(B). *See Gross v.*

*United States*, 676 F.2d 295, 304 (8th Cir. 1982).

The House Report referred to by my colleagues, *supra*, at 199, provides in part as follows:

> The purpose of section 1605(a)(5) is to permit the victim of a traffic accident or *other noncommercial tort* to maintain an action against the foreign state to the extent otherwise provided by law. (emphasis supplied)

Under the heading "The Non-Commercial Tort Exception," (*supra*, at 199), my colleagues correctly cite "misrepresentation" and "deceit" as actions against which a foreign state may continue to claim immunity. They then state that "the wrongful acts alleged to have caused [Efua's] injury are misrepresentations made to Efua Cabiri concerning her husband's whereabouts." (*supra*, at 200). Ergo, they conclude, Ghana was entitled to immunity from Efua's claim. I disagree.

The fallacy in this reasoning is that claims for misrepresentation and deceit generally are limited to actions which involve commercial decisions predicated on incorrect or incomplete information. *See Block v. Neal*, 460 U.S. 289, 296 n. 5, 103 S.Ct. 1089, 75 L.Ed.2d 67 (1983)(citing *United States v. Neustadt*, 366 U.S. 696, 711 n. 26, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961)); *Kohn v. United States*, 680 F.2d 922, 926 (2d Cir.1982); *Salter v. United States*, 853 F.Supp. 389, 394 (M.D.Ala.1994). This limitation accords with the traditional interpretation of actions based on misrepresentation and deceit, which require a showing of tangible or pecuniary loss. *See, e.g., Cumberland Oil Corp. v. Thropp*, 791 F.2d 1037, 1043–45 (2d Cir.1986), *cert. denied*, 479 U.S. 950, 107 S.Ct. 436, 93 L.Ed.2d 385 (1986); *Day v. Avery*, 548 F.2d 1018, 1029 (D.C. Cir.1976), *cert. denied*, 431 U.S. 908, 97 S.Ct. 1706, 52 L.Ed.2d 394 (1977); *Leung v. Lotus Ride, Inc.*, 198 A.D.2d 155, 156 (N.Y.1993); *Urtz v. New York Central and Hudson River Railroad*, 202 N.Y. 170, 173, 95 N.E. 711 (1911); 37 C.J.S. *Fraud* § 52.

The above-mentioned House Report also states:

The exceptions provided in subparagraphs (A) and (B) of section 1605(a)(5) correspond to many of the claims with respect to which the U.S. Government retains immunity under the Federal Tort Claims Act, 28 U.S.C. § 2680(a) and (h). Indeed, the pertinent immunity provisions of § 2680(h) are identical with those of § 1605; i.e., "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit or interference with contract rights."

I deem it significant that five Circuits, including the Second, *see Kohn, supra,* have held that claims based on the intentional infliction of emotional distress do not fall within the definition of torts listed in the above-quoted section 2680(h). *See Truman v. United States,* 26 F.3d 592, 596–97 (5th Cir.1994). I believe, therefore, that they do not fall within the definitions of torts listed in 28 U.S.C. § 1605(a)(5)(B).

The district court avoided this issue by stating that "[e]ven those allegations asserted by Mrs. Cabiri, stating that she was subjected to mental abuse when she was refused information about her husband, involve alleged conduct of Ghanian official acting in Ghana." 981 F.Supp. at 132. Apparently, the district court was confusing wrongs against Bawol, which did take place in Ghana, with the wrong against Efua, which took place in the United States. My colleagues, however, address the matter directly by holding that "Efua Cibiri's claim for intentional infliction of emotional distress is outside the FSIA's exception for noncommercial torts committed in the United States." *Supra,* 981 F.Supp. at 195. They say:

> Ghana enjoys immunity as to this claim—for emotional injury caused by the refusal of a foreign state, however nefarious, to give its citizens in the United States full or truthful information concerning its operations. The FSIA is not an enforcement mechanism for global freedom of information. *Supra,* 981 F.Supp. at 199.

This, I suggest, is not a correct statement of the issue now before us and the law pertinent to that issue.

The real issue, as I see it, is whether the refusal of Ghana representatives to give the worried and distressed Efua any information about her missing husband constituted sufficiently extreme and outrageous conduct to bring it within the ban of emotional distress causation. I am not satisfied that this issue can be decided justly in the instant case by way of a Rule 12(b)(1) motion. *See Spencer v. Casavilla,* 903 F.2d 171, 173 (2d Cir.1990).

I would permit Efua to go to trial with her husband.