**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

**No: 20-1016**

FRANCE.COM, INC., a California corporation,

        Plaintiff – Appellee,

  v.

THE FRENCH REPUBLIC; ATOUT FRANCE; THE MINISTRY FOR EUROPE
AND FOREIGN AFFAIRS; FRANCE.COM, a domain name,

        Defendants – Appellants,

  and

JEAN-YVES LE DRIAN, in his official capacity as the French Republic's
Minister for Europe and Foreign Affairs; VERISIGN, INC.,

        Defendants.

Appeal from the United States District Court for the Eastern District of Virginia, at
Alexandria. Liam O'Grady, Senior District Judge. (1:18-cv-00460-LO-IDD)

Argued: January 27, 2021                    Decided: March 25, 2021

Before MOTZ, FLOYD and RUSHING, Circuit Judges.

Reversed and remanded with instructions by published opinion. Judge Motz wrote the
opinion, in which Judge Floyd and Judge Rushing joined.

**ARGUED:** John Michael Griem, Jr., CARTER LEDYARD & MULBURN LLP, New York, New York, for Appellants. Benjamin S. Barlow, DUNLAP BENNETT & LUDWIG PLLC, Leesburg, Virginia, for Appellee. **ON BRIEF:** Mark R. Colombell, Zachary D. Cohen, John P. O'Herron, THOMPSONMCMULLAN, P.C., Richmond, Virginia; Nicholas W. Tapert, CARTER LEDYARD & MILBURN LLP, New York, New York, for Appellants. David Ludwig, DUNLAP BENNETT & LUDWIG PLLC, Leesburg, Virginia; Eve J. Brown, C. Alexander Chiulli, BARTON GILMAN LLP, Providence, Rhode Island, for Appellee.

———————

DIANA GRIBBON MOTZ, Circuit Judge:

This appeal involves a dispute as to the ownership of the domain name <France.com>. In 1994, a California corporation, France.com, Inc. ("the Corporation") purchased and registered the domain name <France.com> and trademarks for "France.com." Twenty years later, the Corporation initiated a lawsuit in France alleging that a Dutch company's use of the France.com trademark constituted trademark infringement. The French Republic and its tourism office intervened, seeking to protect their country's identity on the Internet and establish its right to the domain name <France.com>. Following extensive litigation, French trial and appellate courts declared the French Republic the rightful owner of the domain name.

The Corporation then filed this action in federal district court against the French entities, which moved to dismiss the case, asserting sovereign immunity under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1604. After the district court denied the motion, concluding that entitlement to immunity "would be best raised after discovery has concluded," the French entities timely appealed. For the reasons that follow, we reverse the judgment of the district court and remand the case with instructions to dismiss the complaint with prejudice.

I.

A.

In 1994, Jean-Noel Frydman purchased and registered the domain name <France.com>, which sold various services relating to travel in France, including tours and

lodging.  Frydman incorporated his business in California as France.com, Inc. and assigned his interest in the domain name to the California corporation.  He also trademarked "France.com" in the United States and in the European Union.

In May 2014, the Corporation sued a Dutch company in the Tribunal de Grande Instance de Paris ("Paris District Court"), alleging trademark infringement and seeking transfer of trademarks containing the words "France.com."  In April 2015, the French Republic and Atout France, its tourism agency, intervened in that litigation.  They asserted the exclusive right to use the term "France" commercially, contending that under French law, the name "France" cannot be appropriated or used commercially by a private enterprise because doing so violates the French Republic's exclusive right to its name and infringes on its sovereignty.  They further asserted that "France" expresses the country's "geographic, historic, economic and cultural identity."  The Corporation opposed the attempt to intervene.

In November 2015, the Paris District Court permitted intervention and agreed with the French entities that the Corporation's use of the domain name "infringes the rights of the French State to its name, which refers to a sovereign state and identifies [the] country."  The court concluded that the transfer of the domain name <France.com> to the French Republic was appropriate.

The Corporation appealed to the Cour d'Appel de Paris ("Paris Court of Appeals"), which on September 22, 2017, affirmed the order of the Paris District Court.  The Paris Court of Appeals explained that "the designation 'France' constitutes for the French State an element of identity akin to the family name of a natural person."  The Corporation then

4

appealed to the Cour de Cassation ("French Supreme Court"), where we are told the case is now pending.

In March 2018, the French entities presented a copy of the Paris Court of Appeals decision to the domain name registrar Web.com — which was then hosting <France.com> — and Web.com transferred the domain name to Jean-Yves Le Drian, the Minister of Europe and Foreign Affairs of the French Republic.

B.

A month later, the Corporation filed this action in the District Court for the Eastern District of Virginia against the French Republic, Atout France, the Ministry for Europe and Foreign Affairs, Le Drian, the domain name <France.com>, and the domain registry Verisign, Inc. The Corporation alleged that the defendants engaged in cybersquatting and reverse domain name hijacking in violation of the Anticybersquatting Consumer Protection Act, trademark infringement, federal unfair competition, and expropriation.

The Corporation voluntarily dismissed the claims against Verisign. The French Republic, Atout France, the Ministry for Europe and Foreign Affairs, and <France.com> moved to dismiss, arguing that the Corporation failed to state a claim upon which relief could be granted and that they possessed sovereign immunity under the FSIA. The district court concluded that entitlement to FSIA immunity "would best be raised after discovery has concluded," but granted the motion to dismiss for failure to state a claim without prejudice and invited the Corporation to file an amended complaint. When the French entities noted an appeal, we dismissed for lack of jurisdiction. *France.com, Inc. v. The French Republic et al.*, No. 19-1659 (4th Cir. Aug. 27, 2019) (ECF No. 23). Because the

5

district court's dismissal was without prejudice, we concluded that it was neither a final order nor an appealable interlocutory or collateral order. *See Goode v. Cent. Va. Legal Aid Soc'y, Inc.*, 807 F.3d 619, 623–24 (4th Cir. 2015).

Soon after, the Corporation filed an amended complaint and the French Republic, Atout France, the Ministry for Europe and Foreign Affairs, and <France.com> again moved to dismiss. They did not assert that the Corporation failed to state a claim but instead relied on their asserted entitlement to FSIA immunity. The district court dismissed the claims against Le Drian after the United States filed a "Suggestion of Immunity." However, the court refused to dismiss the action as to the other defendants, again reasoning that possible FSIA immunity did "not call for dismissal at this time" but "would be best raised after discovery has concluded." The French Republic, Atout France, the Ministry for Europe and Foreign Affairs, and <France.com> (collectively, the "French State") then noted this appeal.

## II.

In a preliminary motion, the Corporation again challenged our jurisdiction to hear the French State's appeal. We concluded that we have jurisdiction over the instant appeal because the district court rested its order not on a failure to state a claim but solely on a denial of sovereign immunity, which constitutes an appealable collateral order. *France.com, Inc. v. The French Republic, et al.*, No. 20-1016 (4th Cir. March 27, 2020) (ECF No. 25); *see Abelesz v. Magyar Nemzeti Bank*, 692 F.3d 661, 667 (7th Cir. 2012) ("[W]e and other circuits treat denials of sovereign immunity defenses as appealable

6

collateral orders."). We review *de novo* the district court's denial of sovereign immunity under the FSIA. *Wye Oak Tech., Inc. v. Republic of Iraq*, 666 F.3d 205, 212 (4th Cir. 2011).

We first address the district court's concern that its final decision on sovereign immunity should be postponed pending discovery. The Supreme Court has instructed that the existence of sovereign immunity under the FSIA constitutes a "threshold" question. *See, e.g.*, *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 493 (1983). While jurisdictional discovery can sometimes be appropriate, it cannot "supplant the pleader's duty to state those facts at the outset of the case." *Arriba Ltd. v. Petroleos Mexicanos*, 962 F.2d 528, 534 n.17 (5th Cir. 1992). Indeed, because the FSIA seeks to "free a foreign sovereign from *suit*," immunity should be addressed "as near to the outset of the case as is reasonably possible." *Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 137 S. Ct. 1312, 1317 (2017).

The FSIA provides that a "foreign state" enjoys immunity "from the jurisdiction of the courts of the United States" unless a specific, enumerated exception applies. 28 U.S.C. § 1604; *OBB Personenverkehr AG v. Sachs*, 577 U.S. 27, 31 (2015). The Corporation does not contend that any of the remaining defendants fails to qualify as a "foreign state" within the meaning of the FSIA. *See id.* § 1603(a), (b) ("foreign state" includes "an agency or instrumentality of a foreign state"). Thus, the defendants are "presumptively immune from the jurisdiction of United States." *Sachs*, 577 U.S. at 31.

To overcome the FSIA presumption of immunity, a complaint must set forth "sufficient facts to support a reasonable inference that [the] claims" satisfy one of the

7

specific, enumerated exceptions in the FSIA. *Rux v. Republic of Sudan*, 461 F.3d 461, 468 (4th Cir. 2006). The Corporation maintains that its complaint sets forth sufficient facts to establish two of the exceptions: the "commercial activity" exception, *see* 28 U.S.C. § 1605(a)(2), and the "expropriation" exception, *see id.* § 1605(a)(3). Accordingly, we turn to consideration of those exceptions.

III.

The "commercial activity" exception strips foreign states of immunity in cases "based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States." 28 U.S.C. § 1605(a)(2). The FSIA defines "commercial activity" as "either a regular course of commercial conduct or a particular commercial transaction or act." *Id.* § 1603(d).

The FSIA mandates that the "commercial character" of an activity "be determined by reference to the nature of the course of conduct," not "by reference to its purpose." *Id.* § 1603(d). Thus, "the issue is whether the particular actions that the foreign state performs (whatever the motive behind them) are the *type* of actions by which a private party engages in 'trade and traffic or commerce.'" *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 614 (1992) (quoting *Black's Law Dictionary* 270 (6th ed. 1990)). A foreign sovereign engages in "commercial activity" only when it exercises "those powers that can also be

exercised by private citizens," not when it employs "powers peculiar to sovereigns." *Id.* (quoting *Alfred Dunhill of London, Inc. v. Republic of Cuba*, 425 U.S. 682, 704 (1976)).

In determining whether the commercial activity exception applies here, we begin by identifying the conduct on which the action is "based." *See Saudi Arabia v. Nelson*, 507 U.S. 349, 356 (1993); *see also Garb v. Republic of Poland*, 440 F.3d 579, 586 (2d Cir. 2006) (noting that the "threshold step" is identifying the "act of the foreign sovereign State that serves as the basis for plaintiffs' claims"). To do so, we look to the "gravamen of the complaint," meaning the "basis" or "foundation" for it. *Nelson*, 507 U.S. at 357 (citing *Callejo v. Bancomer, S.A.*, 764 F.2d 1101, 1109 (5th Cir. 1985)). We examine the "core of [the] suit," that is, the "acts that actually injured" the plaintiff. *Sachs*, 577 U.S. at 35.

The Corporation argues that the act providing the basis for its suit is the French State's use of <France.com> to offer links to tours, accommodations, restaurants and other tourism resources and to sell advertisements. But study of the complaint makes clear that the conduct that the Corporation asserts "actually injured" it is not subsequent use of the website, but the adverse French judgment holding that <France.com> properly belongs to the French State. All asserted injuries alleged in the complaint flow from that French judgment. *Cf. Valambhia v. United Republic of Tanzania*, No. 18-cv-370, 2019 WL 1440198, at *4 (D.D.C. Mar. 31, 2019), *aff'd*, 964 F.3d 1135 (D.C. Cir. 2020) (holding an action for recognition of a foreign judgment was not a "commercial activity" because courts may not "consider the underlying commercial conduct that gave rise to the foreign judgment").

9

For example, the complaint repeatedly alleges that the French State's use of the website and "any commercial revenue flowing from" that use are a "direct result of [the French State] illegally seizing the <[F]rance.com> website domain from plaintiff." It further alleges that the French State "illegally seiz[ed] the <[F]rance.com> website domain"; that the French State "misused the French judicial system to seize the domain from Plaintiff"; that the French State "lack[ed] [] authority to seize property"; and that the French State "usurp[ed]" and "expropriated" the domain name.

As explained below, it is not at all clear that the French State's actions in obtaining the website in a judicial proceeding constitute a "seizure" or an "expropriation" for purposes of the FSIA's "expropriation" exception to immunity. But even if those actions did constitute an "expropriation" under the FISA, they clearly do not constitute a "commercial activity." Rather, it is well established that a "seizure" by a foreign government constitutes a sovereign activity. *See, e.g.*, *de Csepel v. Republic of Hungary*, 714 F.3d 591, 600 (D.C. Cir. 2013) ("expropriation 'constitute[s] a quintessentially sovereign act' falling outside the scope of the commercial activity exception") (cleaned up); *Hunt v. Mobil Oil Corp.*, 550 F.2d 68, 73 (2d Cir. 1977) ("Expropriations . . . are traditionally considered to be public acts of the sovereign removed from judicial scrutiny."). The complaint's repeated references to the French State's "seizure" of the domain name makes clear that this case is "in essence based on disputed takings of property," and not any "subsequent treatment" of that property. *Garb*, 440 F.3d at 586, 588.

Nor does it matter what motivated the French State to intervene in the French lawsuit for purposes of the commercial activity exception. The Corporation suggests that France sought to take control of the domain name in order to take advantage of the Corporation's "market share." And the complaint quotes a French official stating that "[i]t is imperative to take advantage of the www.france.com domain name to ensure our tourist promotion." But the Supreme Court has repeatedly held that the text of the FSIA requires us to examine the nature, or the "outward form of the conduct that the foreign state performs," rather than the purpose, or the "*reason* why the foreign state engages in the activity." *Weltover*, 504 U.S. at 617; *see also Nelson*, 507 U.S. at 361–62.

Finally, to the extent that the Corporation contends that only the transfer of the domain name harmed it, and not the preceding court judgment, that argument too fails. The French judgment — which was affirmed by an appellate court — provided the sole basis for France's request to Web.com to transfer the domain name. Without the judgment issued by the French trial and appellate courts, there would have been no ground for the request. In sum, none of the conduct that the Corporation alleges harmed it would have occurred without that judgment. *See Garb*, 440 F.3d at 587. The Corporation's attempt to reframe this case as one about competitive harm in order to "evade the Act's restrictions through artful pleading" fails. *Sachs*, 577 U.S. at 36.

The Corporation's claims arise from an adverse judgment of a foreign court — in a proceeding initiated by the Corporation itself — resulting in the transfer of the domain name, not any commercial activity that may have followed that transfer. Accordingly, the commercial activity exception to FSIA immunity does not apply.

11

IV.

The Corporation also invokes the "expropriation" exception to FSIA immunity. The expropriation exception applies when property is "taken in violation of international law" and that property is either "present in the United States in connection with a commercial activity carried on in the United States by the foreign state" or "owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States." 28 U.S.C. § 1605(a)(3). To establish the expropriation exception, a plaintiff must show that "(1) rights in property are in issue; (2) that the property was 'taken'; (3) that the taking was in violation of international law; and (4) that one of the two nexus requirements is satisfied." *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 251 (2d Cir. 2000).

The complaint's factual allegations do not permit a reasonable inference that its claims satisfy the expropriation exception. First, it is unclear whether the alleged conduct qualifies as an "expropriation" for FSIA purposes. The French State did not engage in "the nationalization" of the website. *Id.* (citing H.R. Rep. No. 94–1487, at 19 (1976), reprinted in 1976 U.S.C.C.A.N. 6604, 6618). Nor did the French State take the property through eminent domain. *See Expropriation*, *Black's Law Dictionary* (11th ed. 2019) ("A governmental taking or modification of an individual's property rights, esp. by eminent domain; CONDEMNATION").

Rather, French courts held that the French State owns the word "France" because it is integral to its identity as a nation, and so was also entitled to <France.com>. The French

12

courts so held after the French State intervened in litigation in France initiated by the Corporation itself. And the French courts acted only after years of litigation. Although the Corporation now asserts the French courts were biased, it points to nothing that suggests it did not receive a full and fair (and lengthy) opportunity to present its position.

But even if the French judicial decree constitutes an "expropriation" for purposes of the FSIA, the Corporation fails to identify any international law that this "expropriation" violated. *See Fed. Republic of Germany v. Philipp*, 141 S. Ct. 703, 715 (2021) (holding that the international law of property governs whether a foreign sovereign committed a taking in violation of international law). The Corporation argues repeatedly that the French court applied French law in a way that conflicts with or is "hostile to" the laws of the United States. Even if this is accurate, it does not demonstrate a violation of international law, as is required to satisfy the expropriation exception to FSIA immunity. *Id.* at 714 ("United States law governs domestically but does not rule the world." (citing *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 115 (2013)).

The Corporation also asserts that the French courts had no authority to declare the domain name <France.com> the property of the French State. The Corporation claims that the order doing so is "specious" and was rendered absent "legitimate legal process." Other than assertedly reaching a result contrary to the laws of the United States, the Corporation does not explain or even allege how this is so. The French courts are courts of competent jurisdiction. Neither in its amended complaint nor its brief does the Corporation assert facts supporting a claim that the French legal process was not "legitimate." Moreover, this would seem to be a difficult and unlikely claim given that the Corporation itself invoked

13

the power of the French courts. Only because it did so could the French State intervene in that action to obtain the result challenged here.

In short, the Corporation has alleged no "expropriation" in violation of international law, and thus the expropriation exception to the FSIA also does not apply.*

V.

For the foregoing reasons, we reverse the judgment of the district court. We remand the case with instructions to dismiss with prejudice for lack of subject matter jurisdiction under the FSIA.

*REVERSED AND REMANDED WITH INSTRUCTIONS*

---

* The Corporation's brief argument that a United States court can exercise *in rem* jurisdiction over the domain name <France.com> also fails. Under the FSIA, foreign property is immune from pre-judgment arrest unless three conditions are satisfied: the property is "used for a commercial activity in the United States"; the foreign state "has explicitly waived its immunity from attachment prior to judgment"; and the purpose of the attachment is to "secure satisfaction of a judgment" that may be entered against the foreign state, and "not to obtain jurisdiction." 28 U.S.C. §§ 1609, 1610(d)(1), (2). France has certainly not waived immunity, and the Corporation seeks arrest of <France.com> to obtain jurisdiction. Thus, the Corporation asserts no basis for *in rem* jurisdiction.