# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued November 14, 2025          Decided May 29, 2026

No. 25-7033

GLOBAL VOICE GROUP SA,
APPELLANT

v.

REPUBLIC OF GUINEA,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:22-cv-02100)

———

*Alexander H. Loomis* argued the cause for appellant. With him on the briefs were *Dennis Hranitzky* and *Owen B. Smitherman*.

*James H. Boykin III* argued the cause for appellee. With him on the brief were *Carter Rosekrans*, *Winthrop Jordan*, and *Kayahan Cantekin*.

Before: HENDERSON, KATSAS and GARCIA, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: This case stems from a contractual dispute between the Republic of Guinea (Guinea) and Global Voice Group SA (Global Voice), a Seychellois company that offers financial and telecommunications services. Global Voice sued Guinea, seeking confirmation of an arbitral award and recognition of a foreign court judgment. The district court dismissed both claims for lack of subject matter jurisdiction, reasoning that Guinea is immune from suit. Global Voice challenges both dismissals.

This appeal can be resolved by applying two recent decisions of the Court. We cannot conclude on this record that the district court lacked jurisdiction of Global Voice's award-confirmation claim because its dismissal of that claim failed to account for our holding in *TIG Insurance v. Republic of Argentina*, 110 F.4th 221 (D.C. Cir. 2024). Separately, our decision in *Amaplat Mauritius Ltd. v. Zimbabwe Mining Development Corp.*, 143 F.4th 496 (D.C. Cir. 2025), confirms that the district court lacked jurisdiction to entertain Global Voice's judgment-recognition claim. Accordingly, we vacate the dismissal of the award-confirmation claim, affirm the dismissal of the judgment-recognition claim and remand the award-confirmation claim to the district court.

## I. Background

"[P]remised upon the 'perfect equality and absolute independence of sovereigns,'" the "doctrine of foreign sovereign immunity has been recognized since early in the history of our Nation." *Republic of Philippines v. Pimentel*, 553 U.S. 851, 865 (2008) (quoting *Schooner Exch. v. McFaddon*, 11 U.S. (7 Cranch) 116, 137 (1812)). Because this immunity is "a matter of grace and comity" and not a constitutional command, *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S.

480, 486 (1983), its contours have shifted over time, *see Turkiye Halk Bankasi A.S. v. United States*, 598 U.S. 264, 271–72 (2023) (summarizing the evolution of our Nation's approach to foreign sovereign immunity).

Today, the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. §§ 1330, 1602 *et seq.*, governs whether a foreign state is immune from suit in the United States. The FSIA provides "a comprehensive set of legal standards governing claims of immunity in every civil action against a foreign state or its political subdivisions, agencies, or instrumentalities," *Verlinden B.V.*, 461 U.S. at 488, and "codifies a baseline principle of immunity," *Turkiye Halk Bankasi*, 598 U.S. at 272. It also includes a series of "exceptions to that principle." *Id.* This framework constitutes "the sole basis for obtaining jurisdiction over a foreign state in federal court." *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 439 (1989). Thus, in the absence of an applicable FSIA exception, a federal court lacks subject matter jurisdiction of a suit brought against a foreign state. *See Borochov v. Islamic Republic of Iran*, 94 F.4th 1053, 1060 (D.C. Cir. 2024).

Relevant here, the FSIA's arbitration exception abrogates a foreign state's sovereign immunity if an "action is brought . . . to enforce an [arbitration] agreement made by the foreign state . . . or to confirm an award made pursuant to such an agreement." 28 U.S.C. § 1605(a)(6). To determine whether an arbitration agreement was "made by the foreign state," *id.*, we ask whether the agreement "legally binds that sovereign to arbitrate with the party opposing . . . sovereign immunity," *TIG Ins.*, 110 F.4th at 231.

The FSIA's waiver exception abrogates a foreign state's sovereign immunity in any case "in which the foreign state has waived its immunity either explicitly or by implication." 28

U.S.C. § 1605(a)(1). "The FSIA does not specifically define what will constitute a waiver 'by implication.'" *Khochinsky v. Republic of Poland*, 1 F.4th 1, 8 (D.C. Cir. 2021) (quoting 28 U.S.C. § 1605(a)(1)). For decades, however, we have "followed the 'virtually unanimous' precedents construing the implied waiver provision narrowly." *Creighton Ltd. v. Government of State of Qatar*, 181 F.3d 118, 122 (D.C. Cir. 1999) (quoting *Shapiro v. Republic of Bolivia*, 930 F.2d 1013, 1017 (2d Cir. 1991)).

In 2009, Global Voice entered into an agreement related to Guinea's telecommunications industry (Partnership Agreement). With what entity or entities Global Voice contracted is a matter of dispute. The Partnership Agreement defined its parties as Global Voice and the Postal and Telecommunications Regulatory Authority of Guinea (PTRA), a public legal entity established under Guinean law. The Partnership Agreement was signed not only by representatives from Global Voice and the PTRA but also by Guinea's Minister of Telecommunications and New Information Technologies. The Partnership Agreement obligated Global Voice to assist the PTRA in creating a "regulatory framework" for the Guinean telecommunications industry and to "[p]rovide and install control tools for the State of Guinea, giving it the capacity to view and bill" telecommunications traffic. J.A. at 219. It also contained a clause (Arbitration Agreement) that subjected the "Parties . . . to the exclusive jurisdiction of the Arbitration Rules of the International Chamber of Commerce in Paris." J.A. at 225.[1]

---

[1] The Partnership Agreement was amended twice. Neither amendment altered the Arbitration Agreement and both amendments referred to Global Voice and the PTRA as the parties to the Partnership Agreement. The first amendment contained signatures of

The relationship between Global Voice and the PTRA deteriorated quickly. By early 2012, the PTRA owed Global Voice more than $13 million in unpaid invoices. Global Voice and the PTRA attempted to resolve their differences but those efforts failed. In 2016, Global Voice took the position that it was owed more than $103 million under the Partnership Agreement. When the PTRA refused to pay, Global Voice submitted a request for arbitration against the PTRA and Guinea to the International Chamber of Commerce.[2]

The PTRA and Guinea contended that the arbitral tribunal lacked personal jurisdiction of Guinea, arguing that the Republic signed the Partnership Agreement "as [a] supervising authority" only and "did not consent to being a party" to that agreement. J.A. at 51. The arbitral tribunal rejected the argument, concluding that Guinea was both a "party to" and "beneficiary of" the Partnership Agreement and was therefore bound by the Arbitration Agreement. J.A. at 55. On the merits, the arbitral tribunal found that the PTRA and Guinea failed to satisfy their obligations under the Partnership Agreement and awarded Global Voice more than $21 million in damages, in addition to fees and costs (Arbitral Award).

---

the original three signatories but the subsequent one was signed by Global Voice and the PTRA only.

[2] The International Chamber of Commerce is a French-based nongovernmental organization. *See Nat'l Broad. Co. v. Bear Stearns & Co.*, 165 F.3d 184, 185 (2d Cir. 1999). The Chamber oversees the International Court of Arbitration, which has resolved commercial disputes for more than a century. *See* Marc Jonas Block, *The Benefits of Alternate Dispute Resolution for International Commercial and Intellectual Property Disputes*, 44 Rutgers L. Rec. 1, 18 (2016).

Hoping to annul the Arbitral Award, the PTRA and Guinea sought relief in the Court of Appeal of Paris.[3] That court declined to annul the Arbitral Award and entered a judgment requiring the PTRA and Guinea to pay €200,000 in costs (Paris Judgment). Guinea and the PTRA challenged the Paris Judgment in France's highest court, the *Cour de Cassation*.[4] That challenge ultimately failed.

Seeking confirmation of the Arbitral Award and recognition of the Paris Judgment, Global Voice sued Guinea—but not the PTRA—in our district court. Guinea moved to dismiss for lack of subject matter jurisdiction, arguing that it is immune from suit as a sovereign state. Global Voice disagreed, taking the view that jurisdiction was proper under the FSIA's arbitration and waiver exceptions.

In ruling on Guinea's motion to dismiss, the district court did not distinguish between Global Voice's award-confirmation claim and its judgment-recognition claim. It began by considering its jurisdiction under the FSIA's arbitration exception and framed the relevant inquiry as whether "Guinea was a party to the Arbitration Agreement." *Glob. Voice Grp. SA v. Republic of Guinea*, No. 1:22-cv-02100, 2025 WL 522048, at \*12 (D.D.C. Feb. 18,

---

[3] The Court of Appeal of Paris is one of several intermediate appellate courts in France. *See* Frederick H. Lawson, *The Approach to French Law*, 34 Ind. L.J. 531, 538 (1959); *France.com, Inc. v. French Republic*, 992 F.3d 248, 250 (4th Cir. 2021).

[4] Nicolas Marie Kublicki, *An Overview of the French Legal System from an American Perspective*, 12 B.U. Int'l L.J. 57, 65 (1994); *see also id.* (observing that "the mission of the *Cour de Cassation* is to maintain uniformity in the application of French law").

2025). It rejected Global Voice's argument that "French contract law" governs the question of Guinea's status as a party, but it did not provide its own view as to what law governs. *Id.* at \*13. Applying an unspecified body of law, the district court concluded that Global Voice failed to show that Guinea was a party to the Arbitration Agreement. *Id.* at \*12–14. In its view, the signature of Guinea's Minister of Telecommunications and New Information Technologies, Guinea's involvement in the negotiation of the Partnership Agreement and the benefits Guinea received from that agreement were insufficient to establish party status. It thus concluded that "this suit does not fall within the FSIA's arbitration exception." *Id.* at \*14.

The district court also concluded that the FSIA's waiver exception does not apply. In reaching this conclusion, it did not express a view on whether a nation implicitly waives sovereign immunity by signing the New York Convention and agreeing to arbitrate in the territory of another signatory. *Id.* at \*14–15.[5] In the district court's view, even if a nation could waive sovereign immunity by such conduct, Guinea did not waive its immunity because it "never agreed to arbitrate the dispute that resulted in [Global Voice's] award." *Id.* at \*15.

Finding the FSIA's arbitration and waiver exceptions inapplicable, the district court concluded that it lacked subject matter jurisdiction and accordingly dismissed the suit. *Id.* at \*15–16. Global Voice challenges that dismissal on appeal.

---

[5] "The New York Convention is a multilateral treaty that addresses international arbitration." *GE Energy Power Conversion Fr. SAS, Corp. v. Outokumpu Stainless USA, LLC*, 590 U.S. 432, 438 (2020).

## II. Analysis

We have jurisdiction under 28 U.S.C. § 1291. We review questions of law de novo and factual determinations for clear error. *Doe v. Taliban*, 101 F.4th 1, 8 (D.C. Cir. 2024). The district court did not evaluate Global Voice's two claims separately but we do so here.[6] Exercising our discretion to "consider jurisdictional questions in any order that we deem prudent," we begin with the award-confirmation claim. *Meza v. Renaud*, 9 F.4th 930, 933 (D.C. Cir. 2021).

### A. Award-Confirmation Claim

We cannot sustain the district court's conclusion that it lacked jurisdiction of Global Voice's award-confirmation claim. It concluded that the FSIA's arbitration exception does not provide a basis for jurisdiction because Guinea was not a party to the Arbitration Agreement. *See Glob. Voice*, 2025 WL 522048, at *12–14. That focus is too narrow.

The FSIA's arbitration exception applies if an "action is brought . . . to enforce an [arbitration] agreement made by the foreign state . . . or to confirm an award made pursuant to such an agreement." 28 U.S.C. § 1605(a)(6). In *TIG Insurance v. Republic of Argentina*, we rejected the argument that such an agreement can be made only by a foreign state that was a party to the agreement. 110 F.4th 221, 231 (D.C. Cir. 2024).

---

[6] Our claim-by-claim approach comports with the Court's general practice in FSIA cases, *see Rodriguez v. Pan Am. Health Org.*, 29 F.4th 706, 714 (D.C. Cir. 2022), and is particularly appropriate here in light of "the conceptual difference between arbitral awards and foreign court judgments on arbitral awards," *Comm'ns Imp. Exp. S.A. v. Republic of the Congo*, 757 F.3d 321, 330 (D.C. Cir. 2014).

Recognizing that many principles of contract law "allow a contract to be enforced . . . against nonparties," *id.* at 234 (quoting *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009)), we held that the relevant question is whether the arbitration agreement in question "legally binds [the] sovereign to arbitrate with the party opposing . . . sovereign immunity," *id.* at 231. To answer whether an arbitration agreement legally binds a sovereign to arbitrate, a court must first determine "what source of law governs the question of enforcement" of the agreement. *Id.* at 235. It "must then determine whether, under that law," the sovereign is bound to arbitrate. *Id.* Here, the district court made neither determination; that is, it failed to determine whether, under the relevant body of law, the Arbitration Agreement bound Guinea to arbitrate, whether as a party or a nonparty.

We do not conclude that the district court had jurisdiction of Global Voice's award-confirmation claim. We hold only that the district court should have applied the inquiry set forth in *TIG Insurance* in ruling on Guinea's motion to dismiss. We therefore vacate the dismissal of Global Voice's award-confirmation claim and remand for further proceedings.[7]

**B. Judgment-Recognition Claim**

Global Voice also challenges the district court's dismissal of its judgment-recognition claim and argues that jurisdiction

---

[7] Because the district court's failure to apply *TIG Insurance* is dispositive, we do not reach Global Voice's other arguments, "many of which are nevertheless substantial." *United States v. Butler*, 504 F.2d 220, 223 (D.C. Cir. 1974) (per curiam). The district court may consider whether the PTRA is a "political subdivision" of Guinea and, if so, whether the PTRA and Guinea are one and the same for purposes of establishing subject matter jurisdiction under the

was proper under the FSIA's arbitration and waiver exceptions. Both paths to jurisdiction, however, are foreclosed by our decision in *Amaplat Mauritius Ltd. v. Zimbabwe Mining Development Corp.*, 143 F.4th 496 (D.C. Cir. 2025).[8]

First, the arbitration exception abrogates a foreign state's immunity in an action "to enforce an [arbitration] agreement made by the foreign state . . . or to confirm an award made pursuant to such an agreement." 28 U.S.C. § 1605(a)(6). In *Amaplat*, we recognized that this language makes no mention of foreign court judgments and declined "to expand the reach of the arbitration exception beyond its plain terms." 143 F.4th at 502. We therefore held that the FSIA's arbitration exception does not abrogate a foreign state's immunity in an action seeking recognition of a foreign court judgment. *Id.* This case is virtually on all fours with *Amaplat*. It is true that the *Amaplat* plaintiffs sought only recognition of a foreign court judgment and Global Voice seeks recognition of a foreign court judgment *and* confirmation of an arbitral award. But the existence of a second claim lacks jurisdictional significance because we make FSIA immunity determinations on a claim-by-claim basis.

arbitration or waiver exceptions. 28 U.S.C. § 1603(a); *see Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 151–53 (D.C. Cir. 1994); *Wye Oak Tech., Inc. v. Republic of Iraq*, 666 F.3d 205, 213–15 (4th Cir. 2011); *Garb v. Republic of Poland*, 440 F.3d 579, 591–97 (2d Cir. 2006).

[8] That *Amaplat* was issued after the district court dismissed Global Voice's judgment-recognition claim does not prevent us from relying on *Amaplat* as the basis for affirming that dismissal. *See Kaplan v. Cent. Bank of the Islamic Republic of Iran*, 896 F.3d 501, 515–16 (D.C. Cir. 2018) (affirming the dismissal of claims brought under the Alien Tort Statute in light of a later-issued Supreme Court decision). In so relying, we decline Global Voice's request to revisit *Amaplat*.

*Rodriguez v. Pan Am. Health Org.*, 29 F.4th 706, 714 (D.C. Cir. 2022); *see Broidy Cap. Mgmt., LLC v. State of Qatar*, 982 F.3d 582, 590 n.2 (9th Cir. 2020). *Amaplat* therefore applies with full force here and the FSIA's arbitration exception does not apply to Global Voice's judgment-recognition claim.

*Amaplat* is similarly dispositive with respect to the FSIA's waiver exception. Global Voice contends that Guinea implicitly waived its sovereign immunity by signing the New York Convention. But we held in *Amaplat* that a nation does not "waive immunity from judgment recognition actions" by "[s]igning the New York Convention." 143 F.4th at 503. This holding also applies with equal force irrespective of whether a judgment-recognition claim stands alone or is brought alongside another claim. *See Rodriguez*, 29 F.4th at 714 (explaining our claim-by-claim approach to making immunity determinations under the FSIA). The FSIA's waiver exception is therefore inapplicable.

Because neither the FSIA's arbitration exception nor its waiver exception provided a basis for the district court to exercise jurisdiction, and in the absence of any other applicable exception, we affirm the district court's dismissal of Global Voice's judgment-recognition claim.

\* \* \*

For the foregoing reasons, we vacate the district court's dismissal of Global Voice's award-confirmation claim, affirm the dismissal of its judgment-recognition claim and remand to the district court for proceedings consistent herewith.

*So ordered.*